SCHWARTZ ET AL. *v.* IRVING TRUST CO., TRUSTEE IN BANKRUPTCY, ET AL.

No. 436. Argued December 16, 1936.—Decided January 4, 1937.

*Mr. Murray C. Bernays*, with whom *Miss Susan Brandeis* was on the brief, for petitioners.

*Mr. William D. Whitney*, with whom *Mr. R. L. Gilpatric* was on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The provability of certain landlords' claims in proceedings under § 77B of the Bankruptcy Act is here drawn in question. The petitioners were lessors of the debtor. Their leases were rejected in a bankruptcy proceeding pending when the reorganization section was adopted. All of the leases contained indemnity covenants similar to that considered in *Kuehner* v. *Irving Trust Co., ante,* p. 445. The variant in the present case is the contention that prior to initiation of the 77B proceeding, the petitioners bargained away any valid claims they had against the debtor and its assets.**

---

**This paragraph appears here as amended by order of February 1, 1937.

In August 1932, when United Cigar Stores Company was adjudicated a voluntary bankrupt, there were in force about one thousand leases under which it held real estate. In some cases the trustee desired to retain the demised premises under a new lease for a shorter term, or at a lower rental, or both. In others, where the company occupied and used but a part of the premises and sublet the balance, the trustee desired the abrogation of the lease as to that portion which United had sublet, and a new lease covering only the portion used by United. In certain instances where the company was lessee and sole occupant, or occupied a part and sublet a part, or had sublet the entire premises, the trustee wished to be rid of the leasehold.

In order to deal with these varying situations the trustee presented appropriate forms of agreement to landlords, many of whom executed them. Ninety-four landlords who had re-entered the demised premises, pursuant to such agreements, during the pendency of the original bankruptcy, filed claims in the reorganization proceeding. From the District Court's disallowance of the claims all the claimants joined in a single appeal to the Circuit Court of Appeals. That court found that each of eighty-two claimants, in connection with the transfer of possession of the premises, or the modification of the existing leases, gave a general, unqualified release to the trustee, individually and as trustee, to the bankrupt and to the bankrupt estate, of all claims under the leases or in respect of rent. Three, so the court found, gave releases containing reservations which were not broad enough to preserve claims provable under § 77B.

The court held that the releases executed by these eighty-five landlords were not procured by duress or misrepresentation, were for a valid consideration, and extinguished all claims the releasors might have had. As

respects the remaining nine claims, the court divided, a majority holding the agreements the landlords executed, and what was done pursuant to the agreements, amounted to a surrender under state law and therefore deprived the claimants of the right to prove, and one judge holding that whether or not surrenders had occurred under state law the form of the agreements reserved claims against the debtor's assets in the reorganization proceeding.[1]

All ninety-four claimants petitioned this court for review by certiorari. We granted the writ to the nine last mentioned.

In each of the cases under consideration surrender and repossession of the premises was pursuant to an agreement between the claimant, as lessor, the respondent, as trustee, and the United Company. After describing the lease, reciting the state of the title thereunder, the bankruptcy proceeding, and the authority granted the trustee by the court to reject the lease, the contract contains these provisions: The trustee assigns to the lessor its right, title, and interest in and to the lease and any subleases; the bankrupt does the same, and also assigns its right to any rent accrued and to accrue under subleases; the trustee agrees to pay to the landlord any rents received from subtenants by it as receiver or trustee, less certain costs; the landlord assumes all existing and future obligations, terms, and conditions of and under the lease and any sublease which would be performable by the bankrupt or the trustee. By article Fifth the landlord releases the trustee (individually and as receiver and trustee), the bankrupt estate, and the bankrupt from any and all liability of any nature with respect to the lease and the subleases and with respect to the premises, including all claims of the landlord in respect of rent or use

---

[1] *In re United Cigar Stores of America,* 83 F. (2d) 202; on rehearing 85 F. (2d) 11.

or occupation. To each agreement a rider prepared by the trustee was attached at the insistence of the landlord. In most of the cases the rider was substantially in the following form:

"Nothing in this Article 5 shall be deemed a waiver by the Landlord of the right to prove against the Bankrupt Estate any provable claims to which the Bankruptcy Court may adjudge the Landlord is entitled, but this shall not be deemed to render any claim a provable claim which is not otherwise such or to relieve the Landlord from the necessity of proving and obtaining the allowance of any such claim or preclude the Trustee from contesting such proof or allowance."

In one the form was:

"It is, however, expressly understood and agreed that the said Landlord does not waive any right to prove against the Bankrupt Estate any provable claims to which the Bankruptcy Court may adjudge the Landlord is entitled, but this shall not be deemed to render any claim a provable claim which is not otherwise such or relieve the Landlord from the necessity of proving and obtaining the allowance of any such claim or preclude the Trustee from contesting such proof or allowance. All such provable claims shall not be affected by this agreement."

The special master to whom the matter was referred conceded that the riders were intended to preserve claims for future rent, but thought them effective to save only claims the provability of which resulted from a favorable court ruling and that claims rendered provable by subsequent legislation were not within the reservation. The District Court approved the master's report. A majority of the Circuit Court of Appeals held the agreements constituted surrenders, which, according to state law, terminated all rights of the landlords against the tenant, and no claim is provable under § 77B, unless it is a continuing and subsisting claim against the debtor, recognized by

the substantive law of landlord and tenant, that is, by the applicable state law. The riders were construed to be qualifications of the Fifth article only, which was the general release. As there was, in this view of the agreements, no right or claim to be released, a reservation or restriction applicable only to the release amounted to nothing. The dissenting judge agreed that the contracts operated as surrenders but held that the riders were not limited in their operation to the release clause alone but were applicable to the entire contract and were intended and effective to reserve claims which might be found to be provable, despite surrender, either as the result of future judicial decision or future legislative action.

1. We refused to grant certiorari in the case of the eighty-five claimants each of whom, for a consideration, bargained away all claims, present or prospective, against the bankrupt, the trustee, and the estate. We agree with the court below that, under well settled principles, their releases preclude proof of claims for future rent or for indemnity.

2. We have held in *City Bank Farmers Trust Co.* v. *Irving Trust Co., ante,* p. 433, that surrender by the trustee, acceptance by the landlord, reëntry, and the exercise of dominion over the demised premises by the latter after rejection of the lease, do not deprive him of a provable claim in proceedings under § 77B for injury due to rejection of his lease or upon the covenant of indemnity found in the lease. It follows that, except for the release, which was a part of each of the agreements, the petitioners would have provable claims.

3. We do not agree, therefore, that if the earlier paragraphs of the agreements worked a surrender (which we do not decide) nothing was left upon which the final release clause could operate. An absolute release would have been a bar to claims for future rent or for indemnity.

462

4. As we have seen, each of the releases was qualified by a rider which reserved "the right to prove against the Bankrupt estate any provable claims to which the Bankruptcy Court may adjudge the landlord is entitled." A majority of the court below thought that these riders applied only to the release clause. The dissenting judge thought that they purported to reserve all claims provable as a result of judicial decision or amendment of the statute which might otherwise be lost by the execution and performance of the agreements and that they were effective for that purpose notwithstanding the earlier paragraphs of the agreement amounted to a surrender under state law. We think this is the correct view of the meaning and effect of the reservations. The language in which they are couched is broad enough to include claims under § 77B. They reserve the right to prove against the bankrupt estate any provable claims to which the bankruptcy court may adjudge the landlord is entitled. The bankrupt estate, to which the reservations refer, consists of the property which formerly belonged to the bankrupt and, upon adjudication, came into the custody of the bankruptcy court. It still remains there. Claims for future rent are specifically made provable by § 77B (b) (10). The court having charge of the reorganization proceeding is a bankruptcy court. Section 77A provides: "In addition to the jurisdiction exercised in voluntary and involuntary proceedings to adjudge persons bankrupt, courts of bankruptcy shall exercise original jurisdiction in proceedings for the relief of debtors, as provided in § 77B of this Act." Proceedings in reorganization under § 77B are "proceedings in bankruptcy." [2] They may be initiated in a pending bankruptcy proceeding by the express terms of subsection (p). The petitioners are creditors and their claims are provable by the express terms of the section; the estate against which the peti-

---

[2] *Meyer* v. *Kenmore Hotel Co.*, 297 U. S. 160, 165.

tioners reserved all provable claims is the same estate which was within the jurisdiction of the bankruptcy court at the time the agreements were executed.

The special master found, and it seems to be conceded, that the reservations were intended to preserve claims for future rent or for indemnity for loss of future rent. But the master held, and the majority of the Circuit Court of Appeals agreed, that their scope was restricted to claims provable as a result of judicial decision and did not extend to claims made provable by legislation. The language used does not so limit them. The most that can be said is that there was serious question whether such claims could be proved under the law as it stood when the agreements were executed. For whatever they were worth the petitioners desired the reservations so that they might possibly make good claims for injury done and loss incurred by the abrogation of their leases. If amendatory legislation was adopted the bankruptcy court might, pursuant thereto, adjudge them entitled to allowance of a claim. We think the operation of the saving clause cannot be limited by the fact that the claims are described as those to which the bankruptcy court may adjudge the petitioners entitled. That court's adjudication would necessarily follow and apply any amendment of the Act. We hold, therefore, that the reservation was broad enough to preserve the right to prove whatever claims were provable and allowable either by judicial decision or supplementary legislation. It follows that the petitioners' claims are provable.

The decree below must be reversed and the cause remanded to the District Court for further proceedings in conformity to this opinion.

*Reversed.*

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE took no part in the consideration or decision of this case.