In re RADIO–KEITH–ORPHEUM COR-
PORATION.

FORT WORTH PROPERTIES CORPORA-
TION v. IRVING TRUST CO.
No. 444.

Circuit Court of Appeals, Second Circuit.
July 12, 1937.

Zalkin & Cohen, of New York City (Israel Akselrod and Barney B. Fensterstock, both of New York City, of counsel), for claimant-appellant-appellee Fort Worth Properties Corporation.

William J. Donovan, of New York City (David Teitelbaum and Theodore S. Hope, Jr., both of New York City, of counsel), for appellee-appellant Irving Trust Company, as trustee in reorganization of Radio-Keith-Orpheum Corporation.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Fort Worth Properties Corporation leased a moving picture theater in Fort Worth, Tex., to R-K-O Southern Corporation, which is a wholly-owned subsidiary of Radio-Keith-Orpheum Corporation, the debtor in the above reorganization proceeding instituted under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). Radio-Keith-Orpheum Corporation guaranteed in writing the performance of the lease by R-K-O Southern. The landlord, Fort Worth Properties Corporation, filed proof of its claim in the 77B proceeding against the guarantor to the amount of $507,500.72 which the special master reported should be reduced to $17,139.92. The District Court confirmed the report of the master and made an order allowing the claim at the latter figure. Both the claimant Fort Worth Properties Corporation and the trustee for the guarantor Radio-Keith-Orpheum are dissatisfied with the amount thus fixed, and each has appealed.

The term of the lease began August 1, 1931, and was to end on July 31, 1956. The rental was at $25,000 per annum from the beginning of the term up to July 31, 1936, and was to increase thereafter finally reaching $50,000 per annum. The tenant was given rights to terminate the lease under provisions therein which are not pertinent to the issues before us.

R-K-O Southern entered upon and occupied the demised premises under the lease until January 27, 1933, and paid in full the rent and all other charges down to and including December 31, 1932. On January 27, 1933, R-K-O Southern was adjudicated a bankrupt on its voluntary petition filed in the District Court of Delaware and a receiver was appointed and occupied the premises until March 24, 1933, when they were vacated by the trustee in bankruptcy. No part of the rent due on January 1, 1933, or thereafter has been paid. When the premises were vacated by the trustee, Fort Worth Properties Corporation, the landlord, re-entered and re-let from March 23 to December 31, 1943. On April 8, 1933, the trustee in bankruptcy gave telegraphic notice to the landlord of his disaffirmance and rejection of the lease, and added that the termination was satisfactory to him.

The lessee has received $2,513 upon its claim against the estate of the tenant R-K-O Southern which is a credit upon its claim against the guarantor for unpaid rent under the lease from January 1, 1933, to March 24, 1933, when the premises were vacated by the trustee and the landlord re-entered. There is, therefore, in any event due under the guaranty $6,250 for rentals payable by the terms of the lease on the first days of January, February, and March, 1933, less the credit of $2,513 above mentioned, or the net amount of $3,737 admittedly due from the guarantor. The landlord, however, filed a claim in the above proceeding instituted under section 77B for the reorganization of Radio-Keith-Orpheum Corporation, the guarantor of the lease, for damages based on a breach of the lease by the tenant. The special master and the court below found that under the terms of the lease there was a breach and, pursuant to the covenant of indemnity in article XVII of the lease, allowed as damages against the estate of the guarantor net deficiencies arising upon the reletting of the demised premises by the landlord. They, however, limited such damages to net rentals due and unpaid on September 28, 1934, the date fixed by the court for presentation of claims. Upon the theory that the bar order was applicable to a 77B proceeding in the same way that it would be applicable in an equity receivership, the accrued rentals less the receipts of the landlord from reletting were computed to September 28, 1934, and thus were allowed at only $17,139.92. In Hippodrome Building

Company v. Irving Trust Company, Trustee, 91 F.(2d) 753, decided July 6, 1937 we held that a bar order did not limit the extent of the damages suffered by the landlord and that in the event of a breach of an agreement by the tenant to indemnify the landlord the latter was entitled to prove a claim against a guarantor for the discounted value of the rent payable to the end of the term less the discounted rental value of the remainder of the term not exceeding the three years' gross rental succeeding the date of reentry of the landlord as provided by section 77B (b) (10) of section 77B (11 U.S.C.A. § 207(b) (10). But in the present case, for the reasons hereafter stated, we think that there was no breach which entitled the landlord to re-enter without notice and that his occupation of the premises, after the receiver vacated them on March 24, 1933, terminated the relation of landlord and tenant and ended all rights under the lease. If this be so, the landlord is entitled to recover from the tenant only $3,737, the balance of rent due prior to reentry, and accordingly should be limited to proof of that amount against the guarantor, the debtor herein.

But the master and court below held that the right of the landlord to indemnity under the covenants in article XVII of the lease still existed and allowed the latter $17,595.85 upon its proof of claim. Article XVII provides that in the event (a) the lessee default in payment of rent, (c) an order be issued adjudging the lessee a bankrupt, or appointing a receiver or trustee and such order remain unvacated for a period of sixty days, or (d) the lessee file a voluntary petition in bankruptcy, then, unless the default shall be terminated within the period applicable thereto, the lessor may give notice electing to terminate the lease on the day specified in such notice, which shall be at least twenty days after the date of the giving of such notice, and upon the date therein specified, unless the default shall have been remedied prior to such date the lease shall end. Article XVII goes on to say that: "In the event of the termination of this lease as hereinbefore provided, or in the event that the Lessee shall be dispossessed or be removed from the demised premises during the term hereof by summary proceedings or otherwise, then the Lessor may reenter the demised premises, either by force or otherwise, and remove all persons therefrom and re-let the premises and receive the rental therefor, applying the same (a) first, to the payment of such expenses as may be incurred by the Lessor in re-entering and re-letting, (b) second, to the payment of rental due from the Lessee, and the fulfillment of the covenants of the Lessee herein contained, and (c) third, to the payment to the Lessee of any surplus remaining after the applications mentioned in (a) and (b) above. The Lessee shall be liable for any deficiency which may arise during the remainder of the term hereof and shall pay the same in equal payments upon the dates herein provided for the payment of fixed rental, as the amounts of such deficiency shall from time to time be ascertained. The Lessee * * * expressly waives any notice of proceedings required by law to be given or taken preliminary to re-entry by the Lessor; provided, however, that nothing in this paragraph contained shall be deemed to relieve the Lessor of any of its obligations under this Article to give notice to the Lessee of any threatened default under this lease before it becomes entitled to terminate the same as hereinbefore provided."

The vital question is whether the landlord acquired a claim against the tenant under the foregoing reletting and indemnity clause. It is earnestly contended by counsel for the Fort Worth Properties Corporation that it did, and so the master and the court decided. No notice of default was given by the landlord before re-entry and reletting, as is in general required by Article XVII in order to terminate the lease and give the landlord the right to reenter and relet. But notice is dispensed with by that article where the lessee is "dispossessed or * * * removed from the demised premises during the term * * * by summary proceedings or otherwise." It is argued, and was held below, that the occupation of the premises by the receiver from January 27, 1933, to March 24, 1933, "removed" the tenant in the sense that the word "removed" is used in article XVII of the lease, and that thereupon the lessor became entitled to re-enter without giving notice to the lessee and to relet the premises for its account, holding the latter liable for any deficiency which might arise during the remainder of the term. We cannot attach such a meaning to the word "removed" as used in the context. In the first place, "removed" is to be read with the later words "by summary proceedings or otherwise." "Otherwise" does not natu-

rally refer to a custodial occupation by an officer of the court but, under the rule of "noscitur a sociis," suggests a proceeding by a landlord to regain possession analogous to summary proceedings, such as an action of ejectment. A still stronger reason for believing that an occupation by a receiver is not a "removal" of the tenant within the meaning of article XVII is that subdivision (c) of that article provides for a termination of the lease and re-entry by the landlord upon the appointment of a receiver only after notice. Indeed, under that subdivision the termination of the lease and the right to reenter and relet do not become effective unless the order of appointment remains unvacated for sixty days and a notice of twenty days is thereafter given. It seems quite incredible that the appointment of a receiver referred to in subdivision (c) does not contemplate occupation of the premises and that occupation by him is, under the later provisions of the article, such a "removal" of the tenant as dispenses with the express provisions that the appointment of a receiver gives the landlord the right to terminate the lease and to reenter and relet only after giving the prescribed notice. Indeed this seems doubly certain in view of the provision of the concluding paragraph of article XVII that nothing therein "shall be deemed to relieve the Lessor of any of its obligations * * * to give notice to the Lessee of any threatened default under this lease before it becomes entitled to terminate the same as hereinbefore provided." Moreover, we are not satisfied that the requirement of notice can be regarded as an idle form. In some cases it might well give the tenant time to save a valuable lease.

▮ It is further contended that by the law of Texas, which governs, the retaking of possession by the landlord of the vacant premises would not relieve the tenant from liability for damages even if the lease had contained no covenant of indemnity. Assuming that the Texas decisions, which are in the lower courts and not altogether satisfactory, can be regarded as supporting the above view, the claimant still must have recourse to section 3 of article XXVIII of the lease in order to escape the definite provisions of article XVII requiring notice before reentry and reletting. Section 3 provides that: "All rights and remedies of the Lessor and of the Lessee herein shall be cumulative and none thereof shall exclude any other rights and remedies at law or in equity or otherwise." But the provisions of article XVII are very precise and patently exclusive. They prescribe the conditions upon which the tenant is to become liable to indemnify the landlord and the condition of notice has not been complied with. Therefore, re-entry and reletting without serving the required notice necessarily amounted to an eviction and relieved the tenant from liability to indemnify the claimant. A cumulative remedy is an additional remedy and not one that dispenses with, nullifies, and contradicts requirements inserted in a document to protect the rights of one of the parties. As the master said in his report: "Having agreed upon the consequences of a removal of the tenant from the premises and the re-entry of the landlord, having prescribed the measurement of damages and fixed the time for payment, the remedy thus provided by the lease must be exclusively followed. McCready v. Lindenborn, 172 N.Y. 400, 409, 65 N.E. 208." We think the special clauses of the lease are controlling and that the Texas law has no bearing on the situation. Inasmuch as there is no valid claim against the tenant, there can be none against the debtor Radio-Keith-Orpheum Corporation as guarantor.

▮ The landlord acquired no new right here against the tenant under section 77B. There was no rejection by the trustee prior to re-entry as there was in City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324. The rejection in the present case was only after the landlord had entered the premises and relet without giving the notice prescribed by the terms of the lease. Under every principle of landlord and tenant law the lease was at an end, no enforceable rights in the lease were left to either party, and there was nothing for the trustee to reject. The attempted rejection was two weeks after the landlord had reentered. The tenant and its trustee were then at liberty to treat the lease as at an end.

The order of the District Court is modified so as to reduce the claim of Fort Worth Properties Corporation from $17,139.92 to $3,737, and in other respects affirmed; no costs.