### In re UNITED CIGAR STORES CO. OF AMERICA.

### In re CIGAR STORES REALTY HOLDINGS, Inc.

District Court, S. D. New York.
Dec. 30, 1937.

Cravath, deGersdorff, Swaine & Wood, of New York City, for Irving Trust Co., trustee.

Smyth & Tuttle, of New York City, for trustee of Cigar Stores Realty Holdings, Inc.

Denegre, Leovy & Chaffe, of New Orleans, La., for trustee in New Orleans.

William M. Young, of Harrisburg, Pa., for trustee in Pennsylvania.

Rosenberg, Goldmark & Colin, of New York City, for debtor.

Wright, Gordon, Zachry & Parlin, of New York City, for Reorganization Committee.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, for Debenture Holders' Protective Committee, and for Guaranty Trust Co. of New York as trustee under indenture for debentures.

Mitchell, Taylor, Capron & Marsh, Gilbert, Diamond & Brandeis, and Ralph M. Arkush, all of New York City, for Landlords' Protective Committee.

M. Carl Levine, of New York City, for Jacob Ruppert Realty Corporation and other landlords.

Milbank, Tweed, Hope & Webb, of New York City, for Phœnix Securities Corporation.

Beckman, Bogue, Leake, Stephens & Black, of New York City, for creditors.

William M. Chadbourne, of New York City, for Common Stockholders' Committee.

Shearman & Sterling and Berle & Berle, all of New York City, for Preferred Stockholders' Protective Committee.

Archibald Palmer, of New York City, for Independant Common Stockholders' Committee.

White & Case, of New York City, for United Cigar-Whelan Stores Corporation.

COXE, District Judge.

These are applications for final allowances in the bankruptcy and reorganization proceedings of United Cigar Stores Company of America, which will hereafter be referred to as the "debtor." The two proceedings have extended over a period of about five years, and a number of the applications are for services and expenses in both proceedings. The total amount requested is $1,219,065.23, of which $1,181,989.97 is for services, and $37,075.26 for expenses.

The debtor filed a voluntary bankruptcy petition on August 29, 1932, and the Irving Trust Company was then appointed receiver. The adjudication took place on the same day, and a short time thereafter the Trust Company became the sole trustee. On June 9, 1934, while its affairs were still being administered in bankruptcy, the debtor filed a petition under section 77B, Bankr.Act, 11 U. S.C.A. § 207 and note, and the Trust Company was appointed temporary trustee.

This appointment was made permanent on July 17, 1934, and thereafter the Trust Company continued in charge of the business until July 16, 1937, when the assets were turned over to the new company provided for in the plan of reorganization.

The debtor carried on many of its operations through wholly owned subsidiaries, the principal ones being United Stores Realty Corporation, Cigar Stores Realty Holdings, Inc., and Whelan Drug Company, Inc. There were separate bankruptcy proceedings in this district for these three subsidiaries, and in each case the Trust Company acted both as receiver and trustee. The proceedings relating to the United Stores Realty Corporation resulted in a liquidation, and the case has been closed. In the case of the Cigar Stores Realty Holdings, Inc., the proceedings were consolidated with the reorganization proceedings of the debtor and the remaining assets were included in the property turned over to the new company. The Whelan Drug Company, Inc., changed its name to Retail Chemists Corporation just prior to bankruptcy, and its assets were acquired at bankruptcy sale by the trustee of the debtor. These assets also have been transferred to the new company, and the proceeding has been closed.

Prior to bankruptcy the debtor operated a chain of nearly one thousand retail cigar stores; it had in addition sales agency arrangements with more than eleven hundred independently owned stores; and through the Whelan Company it also operated a chain of over one hundred and eighty drug stores. These stores were all scattered in various parts of the country, and the yearly business ran into large figures.

The company and its subsidiaries owned outright a considerable amount of real estate. It also held under lease more than a thousand other properties. These properties were located in various states and in the District of Columbia. Some were used wholly for the debtor's retail business; others were only partly so used and the unoccupied portion sublet; and still others were held in anticipation of a rise in realty values. Most of the real estate was owned or controlled through United Stores Realty Corporation and Cigar Stores Holdings, Inc.

In July, 1933, a plan of reorganization was proposed by representatives of the then provable claims, amounting to over $10,000,-000. This plan completely ignored the landlords, whose defaulted lease claims were not at the time provable. Manhattan Properties v. Irving Trust Co., 291 U.S. 320, 54 S. Ct. 385, 78 L.Ed. 824. It also failed to recognize to any appreciable extent the stockholders of the company. The landlords protested, and opposed any action leading to the consummation of the plan. In the meantime, three cash dividends totaling 50 per cent., and aggregating over $4,000,000, were declared by the referee; and in June, 1934, section 77B became law, making more than seven and a half million additional claims provable against the estate. This combination of circumstances made the plan thoroughly impracticable, and in September, 1934, it was abandoned.

The reorganization plan which has now been confirmed has been the result of protracted negotiations covering a considerable period of time. An earlier plan, which had the support of most of the then existing interests, became impossible after the decision of the Supreme Court on the qualified release claims. Schwartz v. Irving Trust Co., 299 U.S. 456, 57 S.Ct. 303, 81 L. Ed. 348. This decision very materially increased the allowable claims against the estate, and a recasting of the plan became necessary in order to provide for the enlarged indebtedness. The final plan was formally proposed on April 19, 1937, and confirmed on June 10, 1937. The properties were turned over to the new company on July 16, 1937.

In the Paramount Case, In re Paramount-Publix Corp., D.C., 12 F.Supp. 823, some of the general principles governing allowances in bankruptcy and 77B proceedings were stated. I consider these general principles applicable to this case. In some respects they have already been approved by the Circuit Court of Appeals for this circuit, in Re Paramount Publix Corp., Palmer v. Paramount Pictures, 85 F.2d 588; and I do not understand that they are seriously questioned by any of the present applicants.

It is urged with respect to some of the applications that there is authority to make allowances to attorneys for creditors or committees for services during the regular bankruptcy proceedings. It is well settled, however, that such services cannot be compensated for in bankruptcy. In Re Realty Associates Securities Corp., 2 Cir., 69 F.2d 41, certiorari denied Bondholders' Committee v. Realty Associates Securities

Corp., 292 U.S. 628, 54 S.Ct. 631, 78 L.Ed. 1482; In re Allied Owners Corp., 2 Cir., 79 F.2d 187; In re Paramount Publix Corp., Zirn v. Paramount Pictures, 2 Cir., 85 F.2d 593. Neither can they be compensated for in the 77B proceedings unless they were "in connection with the proceeding and the plan." Section 77B, subd. (c) (9), of the act, 11 U.S.C.A. § 207(c) (9). The word "proceeding," as used in this subdivision, obviously refers to the 77B proceeding; it furnishes no warrant for any allowance to such attorneys for services in the bankruptcy proceedings unless they were "in connection with—the plan." This, I think, necessarily follows from the fact that services "in connection with—the plan" may be recognized even though they antedate the "proceeding." In re Paramount-Publix Corp., D.C., 12 F.Supp. 823; In re Paramount Publix Corp., Kuhn, Loeb & Co. v. Paramount Publix Corp., 2 Cir., 83 F.2d 406.

It is also insisted that attorneys for creditors or committees may be compensated for services in aid of the trustee and its attorneys during the 77B proceedings. The principal difficulty with this contention is that in a case where there is a trustee represented by competent counsel, there is ordinarily no room for independent participation in the administration of the estate; and anyone who without express authority performs services within the scope of the duty of the trustee, or the attorneys for the trustee, must look to his own clients for compensation. In re Paramount-Publix Corp., D.C., 12 F.Supp. 823; In re New York Investors, 2 Cir., 79 F.2d 182, 183; In re Eureka Upholstering Co., 2 Cir., 48 F.2d 95. With this limitation, attorneys for creditors or committees may be compensated for beneficial legal services in the 77B proceeding if they were "in connection with the proceeding and the plan."

It is further urged by some of the applicants that whatever was done to assist in the administration of the estate, whether before or after the institution of the 77B proceedings, inevitably tended to promote the rehabilitation of the company, and should, therefore, be deemed to have been performed "in connection with—the plan." That, however, is putting an undue strain on the language of subdivision (c) (9). What is meant by the words "in connection with—the plan" is something directly involved in the preparation, negotiation, and putting through of a plan of reorganization. There may be an allowance for services in opposing a discriminatory plan if these services resulted in the consummation of a better one, In re Consolidated Motor Parts, 2 Cir., 85 F.2d 579; but none for services in merely obtaining a dismissal of the reorganization proceedings, In re Nine North Church St., 2 Cir., 89 F.2d 13. In the reorganization of such a company as the debtor, it was necessary to make many preliminary studies and investigations, draft numerous tentative plans, and conduct prolonged and difficult negotiations before a final definitive plan could even be proposed. It was also essential that those who were engaged in attempting to formulate such a plan should keep in intimate touch with the operation of the business and the legal proceedings. For services of that character which were necessarily performed, and which resulted in substantial benefit to the estate in producing the final result, there is ample authority under section 77B to allow compensation; beyond that the court cannot go.

With this preliminary statement, I pass to a consideration of the different applications.

1. The Irving Trust Company served as receiver and trustee for the debtor and Cigar Stores Realty Holdings, Inc., in the bankruptcy proceedings from August 29, 1932, until June 14, 1934; and as temporary and permanent trustee for both companies in the 77B proceedings from June 14, 1934, to July 16, 1937. During this period it bore a large responsibility not only in the operation of the business but in the care and preservation of the estate; many and difficult administrative problems were presented for solution; and unremitting attention was required to direct, supervise, and manage the manifold activities of the business. All of these services were well performed. The Trust Company was, however, materially aided in its duties by the regular accounting staff of the debtor. It also had the benefit of the accounting services of Price, Waterhouse & Company, for which substantial sums were paid in the regular course of administration. The Trust Company has been paid for services in the Retail Chemists and United Stores cases $164,419.98; it has also received in the proceedings relating to the debtor and Cigar Stores Realty Holdings, Inc., allowances amounting to $158,000. Under all the circumstances, I think that an additional and final allowance of $30,000 should be sufficient.

2. Cravath, deGersdorff, Swaine & Wood acted as attorneys for the receiver and trustee of the debtor throughout the proceedings; they also acted as attorneys for the receiver and trustee of Cigar Stores Realty Holdings, Inc. The services covered a wide range and involved a considerable amount of important litigation, particularly with respect to the claims on the abandoned leases. There were also difficult legal problems growing out of the elaborate corporate structure of the debtor, the conduct of the business in many different states, the rejection of burdensome leases, the making of new leases, the liquidation of assets, and the adjustment of claims. These attorneys also attended to all legal work in the routine administration of the business. This work included advice on complicated tax problems, legislation, and labor difficulties; in scope it comprehended the general counsel work of a large and far flung enterprise operating under unusual and trying conditions. The petition states that more than 28,000 lawyers' hours have been spent on the case, of which 2,700 hours represented the time of partners. It is also stated that interim allowances have been received amounting to $227,000. I shall allow the further sum of $70,000, together with disbursements of $1,963.91.

3. Smyth & Tuttle were designated by the court to act as special counsel for the trustee of Cigar Stores Realty Holdings, Inc., in connection with various claims asserted by that company against the debtor. They made a full and complete examination of the facts and the law relating to the claims, prepared and filed five proofs of claim against the debtor's estate, and kept in close touch with the 77B proceedings. The claims were never tried and became moot after the reorganization. I consider an allowance of $3,500 reasonable.

4. Denegre, Leovy & Chaffe acted as special counsel for the trustee in litigation in Louisiana over some bank deposits in a failed banking institution. The case has now reached a stage in which a recovery of about $3,000 appears to be indicated; but further services will be required on appeal to the higher court. I shall, therefore, allow $500, which is to include payment for any services hereafter rendered in connection with the claim.

5. William M. Young acted as special counsel for the trustee in Pennsylvania in the resettlement of the 1931 capital stock taxes. He succeeded in reducing the claim for these taxes from $1,869.33 to $995.02. He is allowed for his services $200.

6. Rosenberg, Goldmark & Colin were the attorneys for the debtor in both the bankruptcy and 77B proceedings. They do not, however, appear to have drawn the petition and schedules in the bankruptcy proceedings, or the petition in the 77B proceedings. Their services have been largely routine in both proceedings. They received a retainer from the debtor of $1,500 prior to the filing of the bankruptcy petition, and I consider that ample for their services and expenses in the bankruptcy proceedings. They are allowed $1,500 for services in the 77B proceedings, together with disbursements of $33.06.

7. In this application four members of the Reorganization Committee are seeking compensation for services. The Reorganization Committee was formed in July, 1936, and originally consisted of Mr. Grimm, chairman, and Messrs. Murphy and Marony. In March, 1937, Messrs. Chadbourne and Sloan were added as additional members. The purpose was to join in one committee representatives of the different constituent committees in order that a plan might be worked out which would have the support of all interests. Mr. Grimm was chairman of the Landlords' Committee; Mr. Sloan was a member of the same committee; Mr. Marony was designated to represent the Debenture Holders' Committee; Mr. Murphy was chairman of the Preferred Stockholders' Committee; and Mr. Chadbourne was attorney for the Common Stockholders' Committee. Mr. Marony asks no allowance for his services, and inasmuch as the others acted in other capacities for the constituent committees one allowance will be made to each for his services in all capacities. Mr. Grimm became chairman of the Landlords' Committee on its formation in 1934, and served continuously throughout the proceedings. He also testified in support of the plan during the hearings on confirmation. He will be allowed $7,500 for all services in connection with both committees. Mr. Sloan became a member of the Landlords' Committee in February, 1937, and his allowance for all services is fixed at $1,500. Mr. Murphy died shortly after the confirmation of the plan. He had, however, acted as chairman of the Preferred Stockholders' Committee since its formation in 1932, and his services were most helpful in bringing about a reorganization of the company. I shall, therefore,

allow for all of Mr. Murphy's services the sum of $8,000. The application of Mr. Chadbourne will be dealt with hereafter in connection with his application as attorney for the Common Stockholders' Committee.

■ 8. Ford, Bacon & Davis, Inc., were employed by the Reorganization Committee to investigate the business and render a report which might be used as the basis of a plan of reorganization. The amount requested is the agreed cost of the work, and the bill has been approved by the Reorganization Committee. I shall, therefore, allow $17,500, together with disbursements of $922.37, or a total of $18,422.37.

■ 9. This application concerns a disbursement made by Phœnix Securities Corporation for the account of the new company. The sole responsibility for passing on the claim should be assumed by the new company, which has full power to deal with it on its merits. I accordingly make no disposition with respect to the application.

■ 10. Wright, Gordon, Zachry & Parlin have been the attorneys for the Reorganization Committee during the entire period of its existence. Their services commenced on July 27, 1936, and continued without substantial interruption until the plan was fully consummated. The work consisted principally in molding the plan into final shape, carrying it through its various stages to confirmation, and preparing the many complicated papers and documents necessary to make it effective. This was work requiring a high degree of skill, and it was performed with considerable care and ability. It is stated that 1565 hours were spent by partners and 3,809 hours by associates. I shall allow $60,000 in full for services, together with disbursements of $5,993.53.

■ 11. This is an application by the Guaranty Trust Company, the depositary of the Debenture Holders' Committee, for a balance of $15,535.34 on a bill for services, together with $56.30 for unpaid expenses. The total bill of the Trust Company for services is $55,375, on which it has already been paid $39,839.66, leaving $15,535.34 as the amount of the present application. It, therefore, becomes necessary to examine the entire bill to ascertain whether anything further remains to be paid. In making this examination I shall apply the rates for comparable services approved in the Paramount Case.

Item 1 is a charge of $4,182.50 for receiving for deposit 8,365 debentures at 50 cents each. This is allowed. Item 2 is for $9,806 for issuing 19,612 certificates of deposit. This also is allowed. Item 3 is for $2,352.63 for maintaining 957 accounts for four years and eleven months at 50 cents each per annum. The yearly maintenance charge approved in the Paramount Case was 25 cents, and the item is accordingly reduced to $1,176.32. Item 4 is a custody charge of $5,850.79 for holding the deposited debentures for four years and nine months. I think this charge is excessive, and it is reduced to $2,500. Item 5 is a charge of $2,042.25 for receiving for cancellation and retirement 8,169 certificates of deposit at 25 cents each. This is allowed. Item 6 is for $2,878.20 for the preparation of various lists for the use of the committee or the court. I consider $1,500 sufficient for this service, and the item is accordingly reduced to that figure. Item 7 is for $1,513.62 for addressing and mailing, and is allowed. Item 8 is for $1,250 for receiving and disbursing the dividends paid in the bankruptcy proceedings. This also is allowed. Item 9 is for $12,426 for receiving certificates of deposit at three different times in connection with the disbursements of dividends. The charge is at the rate of 50 cents for each of 24,852 certificates so received. I think this rate is excessive, and the item will be reduced to $6,213. Item 10 is a charge of $6,213 for checking certificates of deposit against the books in order to determine the amount of dividends disbursable on each, and for other clerical services in distributing dividends. I think these services are in a large measure covered by Items 8 and 9. Item No. 10 is accordingly reduced to $2,500. Item 11 is for $600 for services rendered to the referee's office, and is allowed. Item 12 is a charge of $4,480 for the preparation of various reports showing transfers of certificates of deposit, including checking and supplying detailed data relating to a large number of debentures. I think this amount is excessive, and it is reduced to $3,000. Item 13 is for $400 for payments made to subagents of the depositary in other cities, and is allowed. Items 14 and 15 are charges aggregating $1,028 for services in connection with the receipt of assignments of claims of general creditors for the purpose of obtaining common stock of the new company under the plan of reorganization which was abandoned. I know of no good reason why the estate should be burdened with this ex-

pense. The item is, therefore, disallowed. Item 16 for $400 is also disallowed as already included in the services covered by the allowed items.

The approved items amount in the aggregate to $36,683.69, and, inasmuch as the Trust Company has been paid more than that amount, the present application is denied.

12. This is an application by the Debenture Holders' Committee merely for the allowance of its necessary expenses. The individual members of the committee ask nothing for their services. The funds to meet the expenses were advanced from time to time by the Guaranty Company of New York and Kuhn, Loeb & Company, and the amounts requested are to reimburse those companies for their respective advances. The total bill of the Guaranty Company is for $16,876.01, on which there has been received $8,985.57, leaving an unpaid balance of $7,890.44. This bill is fully itemized and supported by attached vouchers, and although some of the items appear at this time to be questionable, I am not inclined to disapprove any of them. The Kuhn, Loeb bill for $2,033.08 is also approved.

13. Davis, Polk, Wardwell, Gardiner & Reed were the attorneys for the Debenture Holders' Committee during both proceedings. This committee represented at one time as much as $8,004,500, or over 97 per cent., of the debentures outstanding. There were, however, large withdrawals after the first attempt at reorganization had failed, and when the present plan was confirmed, the representation of the committee had fallen to $3,614,000, or about 44 per cent. of the debentures outstanding. The principal work of the attorneys during the bankruptcy proceedings was in connection with the first plan of reorganization which was abandoned in September, 1934; and this work can hardly form any basis for an allowance now. There were, however, extensive services in protecting the interests of the debenture holders in the 77B proceedings, and in the negotiations leading up to the plan which was confirmed. These attorneys also prepared the new indenture contemplated by the plan, and passed on the various papers and documents required to make the plan effective. They have already been paid from withdrawal fees and dividends the sum of $66,014.73. I shall make a further allowance of $30,000 for services and disbursements.

14. In this application the Guaranty Trust Company asks $6,000 as compensation for its services as trustee of the indenture under which the debentures were issued, and also as trustee of the agreement guaranteeing the debentures. It also requests payment of a balance of $636.52 on a bill of $2,500 for services in connection with the filing of a blanket proof of claim in the bankruptcy proceedings. The agreed rate of compensation of the trustee is $600 a year. I think this is sufficient, and I shall accordingly allow $3,000 for the five-year period. The request for the balance of $636.52 on the bill for $2,500 is disallowed.

15. This is an application by Davis, Polk, Wardwell, Gardiner & Reed for compensation for their services as attorneys for the Guaranty Trust Company, the trustee under trust indenture, and for disbursements. The principal services were in connection with the filing of a blanket proof of claim which was litigated to the Circuit Court of Appeals. They have already received $5,590.45, and are allowed the further sum of $2,909.55, together with disbursements of $322.14.

16. This is an application by the Landlords' Committee for the allowance of compensation to the individual members of the committee and for expenses. The committee was formed in June, 1934, and as originally constituted consisted of Messrs. Grimm, Wright, and Pratt. Messrs. Wise, Goldschmidt, and Sloan were added in February, 1937, after the decision of the Supreme Court on the qualified release claims. In the early stages of the proceedings, the representation of the committee was relatively small, but after the final plan was proposed this representation increased very materially. When the plan was confirmed, the committee represented about three and a quarter millions of allowed claims held by 95 different landlords. The committee played a fairly important part in the negotiation and acceptance of the plan. The applications of Messrs. Grimm and Sloan have already been passed on in connection with their services as members of the Reorganization Committee. Mr. Wright was an officer of the De Forest Corporation, which had a large claim against the estate, and his services were principally in the interest of that company. I think, therefore, that an allowance to him of $750 is sufficient. Mr. Pratt is an officer of the City Bank Farmers Trust Company, which held in a fiduciary capacity various landlords' claims

against the estate. He is allowed $1,000 for his services. Messrs. Wise and Goldschmidt served on the committee for only a short period, and I consider $500 for each of them entirely adequate. I shall also allow the following amounts as committee expenses: $1,500 to Mr. Wales for his services in soliciting acceptances to the plan; $955.72 for expenses of the City Bank Farmers Trust Company, as agent for the committee; and $1,000 in repayment of a loan made to the committee.

■ 17. Mitchell, Taylor, Capron & Marsh and Ralph Montgomery Arkush have been counsel for the Landlords' Committee since its organization in 1934. Gilbert, Diamond & Brandeis were added as associate counsel in February, 1937. The principal services were performed in establishing the claims personally represented by the different attorneys; for those services they have been generously compensated by their respective clients. In this way Mitchell, Taylor, Capron & Marsh have received $130,225.82, and Gilbert, Diamond & Brandeis $24,340. There have also been services in connection with the negotiation, acceptance, and confirmation of the plan, and for these a single allowance of $25,000 will be made, together with disbursements of $1,822.05.

■ 18. M. Carl Levine was the attorney for Jacob Ruppert Realty Corporation, which held a large landlord's claim against the estate; he also represented a number of other landlords' claims which have been allowed in substantial amounts. The services for which he asks compensation commenced in July, 1933, and extended to the time of confirmation. In the bankruptcy proceedings his principal services were in opposing the 1933 plan of reorganization, and in connection with the purchase of the Whelan chain. These services were undoubtedly beneficial, but for the reasons already given they cannot form the basis of an allowance against the estate. In the 77B proceedings, Mr. Levine tried unsuccessfully to put through a reorganization plan of his own. He also contested the Fieldman claims and obtained a favorable decision from the master. He participated, also, in the litigation over the Morewood claim, which resulted in a decision directing that the claim be expunged. His petition recites many other services in aid of the administration, such as objections to claims, advice to the trustee, participation in hearings before the master, and support to the attorneys for the trustee in the contest of claims. I do not think that any of these services can properly be compensated for in the present proceeding; they were either within the scope of the duty of the trustee or its attorneys or were purely voluntary. I do think though that Mr. Levine is entitled to some compensation from the estate for his services in connection with the plan. He represented a substantial interest, and his efforts were helpful in the negotiations over the plan and during the hearings on confirmation. There was room for some independent representation of the landlords, and Mr. Levine was allowed to intervene largely because of the need of such representation. He has already received from his clients $39,025.09. He is allowed $25,000, together with disbursements of $346.44.

■ 19. In this application the Preferred Stockholders' Committee asks for allowances to three of the committee members and compensation for the secretary; it also requests reimbursement for an unpaid balance of $780.34 on account of its expenses. The committee was composed of six members, but only Messrs. Murphy, Baker, and deKrafft have applied for compensation. The total number of shares of preferred stock outstanding was 171,357, and of this amount 72,477 shares were on deposit with the committee at the time of confirmation. The services of Mr. Murphy have already been dealt with in connection with his application as a member of the Reorganization Committee. Mr. Baker was an officer of an insurance company which held a substantial amount of the preferred stock. He will be allowed $500 for his services. A similar allowance of $500 will be made to Mr. deKrafft. I think the amount asked by Mr. Antell for his services as secretary of the committee is clearly excessive. He will be allowed $2,000. The unpaid balance of $780.34 on the expense bill is disallowed. The total expense bill of the committee is $12,907.34, on which it has already been paid $12,129 from withdrawal fees. There are, however, a sufficient number of unallowable items on the bill to absorb the entire balance of $780.34 claimed by the committee.

■ 20. Shearman & Sterling have acted as attorneys for the Preferred Stockholders' Committee since its organization in 1932. Berle & Berle became associate counsel for the committee in 1934. The services follow the usual pattern of keeping in touch

with the court proceedings, making investigations, aiding the trustee and its attorneys on disputed claims, and participating in the negotiations leading up to the proposal of the plan and attendance at the hearings on confirmation. For all services in connection with the plan one allowance of $20,000 will be made to the two firms.

■ 21. This is an application by three members of the Common Stockholders' Committee for compensation for services. The •committee was not organized until September, 1936, and represented only an insignificant amount of common stock. I shall allow to each of the three members of the committee $100, or a total of $300.

■ 22. William M. Chadbourne was the attorney for the Common Stockholders' Committee. He also acted as a member of the Reorganization Committee. He is allowed $3,500 for his services in both capacities, together with his expenses amounting to $2,365.08.

■ 23 & 24. These two applications concern the activities of the Independent Stockholders' Committee and its attorney, Mr. Palmer. The committee was formed after the other Common Stockholders' Committee had entered the field. It represented a small amount of common stock, and its efforts were entirely fruitless in improving the position of the common stockholders. Indeed, it was found in the decision on confirmation that the plan as proposed was more generous to the common stockholders than the figures appeared to warrant. Under these circumstances, it is well settled that no allowances may properly be made. In re Paramount Publix Corp., Palmer v. Paramount Pictures, 2 Cir., 85 F.2d 588.

■ 25. William A. Ferguson was formerly the general attorney and secretary of the debtor; he was continued in the employ of the trustee until March 1, 1935, and was fully paid for his services to that date. He now asks compensation for services as secretary of the debtor in sending out notices for directors meetings, and. correspondence, together with a small item for disbursements. I can see no justification for any allowance for such services. The application is accordingly denied.

There is appended hereto a schedule showing the disposition made of the various applications.

## SCHEDULE OF ALLOWANCES

| No. | | Amounts asked | | Amounts granted | |
|---|---|---|---|---|---|
| | | Services | Expenses | Services | Expenses |
| 1 | Irving Trust Company... | $ 100,000.00 | – – | $ 30,000.00 | – – |
| 2 | Cravath, deGersdorff, Swaine & Wood...... | 150,000.00 | $ 1,963.91 | 70,000.00 | $ 1,963.91 |
| 3 | Smyth & Tuttle........ | 5,000.00 | – – | 3,500.00 | – – |
| 4 | Denegre, Leovy & Chaffe | 500.00 | – – | 500.00 | – – |
| 5 | William M. Young...... | 200.00 | – – | 200.00 | – – |
| 6 | Rosenberg, Goldmark & Colin ............... | 7,500.00 7,500.00 | 6.40 33.06 | 1,500.00 | 33.06 |
| 7 | Reorganization Committee: | | | | |
| | Peter Grimm......... | 15,000.00 | – – | 7,500.00 | – – |
| | Grayson M.-P. Murphy | 7,500.00 | – – | 8,000.00 | – – |
| | William M. Chadbourne | 5,000.00 | – – | (provided for elsewhere) | |
| | John Sloan .......... | 5,000.00 | – – | 1,500.00 | – – |
| 8 | Ford, Bacon & Davis, Inc. ................ | 17,500.00 | 922.37 | 17,500.00 | 922.37 |
| 9 | Phoenix Securities...... | 27,073.29 | – – | – – | – – |
| 10 | Wright, Gordon, Zachry & Parlin ............ | 90,000.00 | 6,510.91 | 60,000.00 | 5,993.53 |
| 11 | Guaranty Trust Company | 15,535.34 | 56.30 | – – | – – |
| 12 | Debenture Committee... | – – | 7,890.44 2,033.08 | – – | 7,890.44 2,033.08 |

## SCHEDULE OF ALLOWANCE—Continued

| No. | | Amounts asked | | Amounts granted | |
|---|---|---|---|---|---|
| | | Services | Expenses | Services | Expenses |
| 13 | Davis, Polk, Wardwell, Gardiner & Reed..... | 58,985.27 | 7.32 | 30,000.00 | – – |
| 14 | Guaranty Trust Company | 6,636.52 | – – | 3,000.00 | – – |
| 15 | Davis, Polk, Wardwell Gardiner & Reed..... | 2,909.55 | 369.89 | 2,909.55 | 322.14 |
| 16 | Landlord's Committee: | | 6,955.72 | | 3,455.72 |
| | Peter Grimm......... | 10,000.00 | – – | (already provided for) | |
| | Edward Wise........ | 6,500.00 | – – | 500.00 | – – |
| | Stewart C. Pratt...... | 6,000.00 | – – | 1,000.00 | – – |
| | Jakob Goldschmidt.... | 2,500.00 | – – | 500.00 | – – |
| | W. Howard Wright... | 2,500.00 | – – | 750.00 | – – |
| | John Sloan........... | 2,500.00 | – – | (already provided for) | |
| 17 | Mitchell, Taylor, Capron & Marsh, Ralph M. Arkush & Gilbert, Diamond & Brandeis..... | 108,000.00 | 1,936.83 | 25,000.00 | 1,822.05 |
| 18 | M. Carl Levine......... | 350,000.00 | 346.44 | 25,000.00 | 346.44 |
| 19 | Preferred Stockholders' Committee: ........ | – – | 780.34 | – – | – – |
| | Grayson M.-P. Murphy | 20,000.00 | – – | (already provided for) | |
| | G. W. Baker......... | 5,000.00 | – – | 500.00 | – – |
| | William deKrafft..... | 5,000.00 | – – | 500.00 | – – |
| | Tristan Antell........ | 10,000.00 | – – | 2,000.00 | – – |
| 20 | Shearman & Sterling and Berle & Berle........ | 100,000.00 | – – | 20,000.00 | – – |
| 21 | Common Stockholders' Committee: | | | | |
| | Benj. L. Allen........ | 300.00 | – – | 100.00 | – – |
| | Kendall Hathaway.... | 200.00 | – – | 100.00 | – – |
| | W. Harry Johns...... | 200.00 | – – | 100.00 | – – |
| 22 | William M. Chadbourne | 5,000.00 | 2,365.08 | 3,500.00 | 2,365.08 |
| 23 | Independent Common Stockholders' Committee: ........... | – – | 1,621.75 | – – | – – |
| | Newton McGovern... | 500.00 | – – | – – | – – |
| | Edward J. Hudson and Maynard Miller....... | 1,000.00 | – – | – – | – – |
| | Albert Lautman...... | 3,650.00 | 1,753.97 | – – | – – |
| 24 | Archibald Palmer....... | 20,000.00 | 1,500.00 | – – | – – |
| 25 | Wm. A. Ferguson...... | 1,300.00 | 21.45 | – – | – – |
| | | $1,181,989.97 | $37,075.26 | $315,659.55 | $27,147.82 |

21 F.Supp.—56