In re HUYLER'S OF DELAWARE, Inc.
In re HUYLER'S.
No. 65454.

District Court, S. D. New York.
Oct. 17, 1939.

Jerome Eisner and Ernst, Gale, Bernays & Falk, all of New York City (Henry I. Fillman, of New York City, of counsel), for debtors.

Monfried & Monfried, of New York City, (David W. Kahn and Nathan Siegel, both of New York City, of counsel), for claimant.

KNOX, District Judge.

The Special Master has considered this claim at length and written an opinion in which he sets forth the reasons for his decision. In addition, the parties have supplied me with lengthy briefs upon the law applicable to the facts. The matter is here on exceptions to the report on the part of each party to the dispute, and the relevant facts are as follows:

In 1926, Huyler's of New York leased from G. T. W. Realty Company a store in a building on West 37th Street, at an annual rental of $30,000 for the first five years, and $32,000 for the remaining 16 years of the term. Subsequently, in 1932, the lease was modified, and Huyler's of New York agreed to pay rent at the rate of $25,000 a year from August 1, 1932 to August 1, 1935, at the rate of $22,000 per year from August 1, 1935 to August 1, 1945, and from August 1, 1945 to January 1948, at the rate of $25,000 per year. The rent was payable in advance, in equal monthly installments. In consideration of the modifications made during this year, Huyler's of Delaware became a guarantor.

On June 3, 1936, both Huyler's of Delaware and Huyler's of New York filed petitions in this court for reorganization under Section 77B of the Bankruptcy Act, 11 U.S. C.A. § 207. At that time, the positions of the original parties to the lease had undergone substantial changes. Hope Estates, Inc., was then the owner in fee. Apparel Realty Corp., the claimant, was lessee of the entire building from Hope Estates. Huyler's of New York was the lessee from Hope Estate of the store, and was in default for the monthly installment of rent due June 1st. As stated above, Huyler's of Delaware was the guarantor.

The debtor was continued in possession of its assets, and by order of court, dated June 18, 1936, Apparel was permitted to institute summary proceedings to dispossess Huyler's from the leased premises. Eviction took place upon June 26th.

Thereafter, Apparel re-let the premises in three subdivisions at an average rental of about $15,500 per year for the entire premises. The Special Master has found that this was the annual rental value in June of 1936. He has also found that the lease was never rejected, either by the court, or the debtor.

Two factors differentiate this claim from those which ordinarily are made in proceedings such as these. The first arises from the wording of paragraph "Eighth" of the lease which reads as follows: "Eighth: If the tenant shall make default in the payment of the rent reserved hereunder or any item of 'additional rent' herein mentioned, or any part of either or in making any other payment herein provided for, * * * the landlord may immediately, or at any time thereafter, re-enter the demised premises and remove all persons and all or any property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law, or by force or otherwise, without being liable to indictment, prosecution or damages therefor, and repossess and enjoy said premises together with all additions, alterations and improvements. In any such case, * * * the landlord may, at the landlord's option, re-let the demised premises or any part or parts thereof, as the agent of the tenant, and receive the rents therefor, applying the same first to the payment of such expenses as the landlord may have incurred, and then to the fulfillment of the covenants of the tenant herein, and the balance, if any, at the expiration of the term first above provided for, shall be paid to the tenant. In the event of re-entry or of termination of this lease by summary proceedings or otherwise, whether or not the premises be re-let, the tenant shall, until the time when this lease would have expired but for such termination, remain liable for, and the tenant hereby agrees to pay to the landlord the equivalent of the amount of all of the rent and additional rent reserved herein, less the avails of re-letting, if any, and the same shall be due and payable by the tenant to the landlord on the several rent days above specified, that is, upon each of such rent days, the tenant shall pay to the landlord the amount of deficiency then existing."

The second is that, on July 21st, about one year after Huyler's eviction, Apparel itself defaulted in payment of its rent, in the amount of $12,811.57, and was dispossessed of its tenancy. For these reasons, debtor argues, that, under the provision of Section 77B, sub. b(10) of the Bankruptcy Act, claimant must prove damages in strict accordance with the covenant of indemnity set forth in the lease, i. e., monthly as the

rent installments fall due, and that the damages must be limited to such as accrued during the time over which claimant had control of the premises. The general question involved is whether or not a claimant may recover damages equal to three years rent, if it be that such claimant lost the premises before expiration of its term. Debtor's position is that the termination of the lease by dispossess proceedings, on June 26, 1936, ended its liability for rent, as such, and that under local law, the only surviving liability is one for damages under paragraph "Eighth" of the lease. The debtor further says that inasmuch as the lease never was rejected, and since it contains a covenant for damages arising out of the termination, the claim is not "one for injury resulting from the rejection of an unexpired lease," and must be determined on the basis of the method provided in the covenant. In support of this contention, the cases of City Bank Farmers Trust Company v. Irving Trust Co., 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324, and In re Radio Keith Orpheum Corp., 2 Cir., 91 F.2d 938, certiorari denied, 302 U.S. 748, 58 S.Ct. 265, 82 L.Ed. 578, are cited. It is said that, under section 77B, sub. b of the Bankruptcy Act, these decisions stand for the proposition that when damages are claimed "for injury resulting from the rejection of an unexpired lease," considerations are to be taken into account which differ from the determinative factors which prevail when the claim is for damages or indemnity under a covenant contained in the lease. The existence of this difference is illustrated by the decision in Meadows v. Irving Trust Company, 299 U.S. 464, 57 S.Ct. 307, 81 L.Ed. 353. But this, alone, is insufficient to support debtor's contention that since the damages arise under the covenant, they are thereby limited to rent which accrued during the continuance of claimant's possession.

Relying upon the decisions in Kuehner v. Irving Trust Company, 299 U.S. 445, 57 S. Ct. 298, 81 L.Ed. 340; City Bank Farmers Trust Company v. Irving Trust Company, 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324; Schwartz v. Irving Trust Company, 299 U. S. 456, 57 S.Ct. 303, 81 L.Ed. 348, and Meadows v. Irving Trust Company, 299 U.S. 464, 57 S.Ct. 307, 81 L.Ed. 353, the Special Master refused to acquiesce in the debtor's arguments. In his opinion, a landlord's damages accrue as of the date of the breach, and are determined as of that date. Were

this not so, the Master thought, a court, in most instances, could not proceed definitely to fix the amount of a landlord's claim unless there was a provision for a reliquidation in the event that the property should be sold before the end of the three year period.

The Master also points out that paragraph "Eighth" of the lease contains a covenant of the type referred to by Justice Roberts in the City Bank Farmers Trust Company v. Irving Trust Company, where he said [299 U.S. 433, 57 S.Ct. 297, 81 L. Ed. 324]:

"The question for decision in this case is whether the claim recognized by section 77B, which would not have been an enforceable demand at common law, or under the laws of many of the states, is allowable only if the leasehold estate has not, after rejection of the lease, been drowned by surrender effective under state law or otherwise terminated pursuant to state law by the lessor's conduct.

"We think it clear that provability of such a claim is unaffected by any termination of the leasehold subsequent to rejection of the lease."

He then construed the provision that payment, by way of damages, should be due on the several rent days, as not constituting an exclusive remedy by which tenant's liability is discharged, as was the case in Meadows v. Irving Trust Company, supra. In the Master's opinion, the controlling portion of the paragraph is that which provides that the tenant agrees to pay the equivalent of the rent reserved, less the avails of re-letting, and the stipulation that this sum is to be payable on the rent days should be given secondary consideration in that it merely fixed the time of payment.

It seems to me that the Special Master is correct. The assumption made in the recent Supreme Court cases, construing Section 77B, sub. b(10), is that, in the event a landlord does have a provable claim, damages are to be limited in the manner set forth in the statute, and, in cases of this kind, they are to be computed as of the date of the reentry. As Mr. Justice Roberts said in Kuehner v. Irving Trust Company, supra [299 U.S. 445, 57 S.Ct. 303, 81 L.Ed. 340]: "What the statute does, is to assure at least three full years' rent to a landlord whose possible loss may exceed that amount, evidently upon the theory that with such an allowance the landlord stands a reasonable

chance of restoring himself to as good a position as if the lease had not been terminated."

In this connection, it is important to note that Mr. Justice Roberts was considering the constitutionality of the statute and the reasonableness of the limitation upon claims. It is safe to say that much of the fairness of the provision would disappear if landlords were to be exposed to the hazards and uncertainties of having their claims reduced by fortuitous events during the very period to which they were limited. Indeed, it may be assumed that the elimination of the risks connected with proving a claim for the entire period of the lease, such as loss by foreclosure or some other intervening mishap, was the quid pro quo which made the limitation fair. Since it is admitted here that Apparel Realty Company has some claim, I must hold with the Master that the only limitation upon the claim is that contained in the statute.

Upon this hearing, the parties have not pressed their other objections to the report and for this reason I shall not discuss them here, except to indicate that I agree with the Master.

The Report is confirmed.