CITY BANK FARMERS TRUST CO., ASSIGNEE, *v.*
IRVING TRUST CO., TRUSTEE IN BANK-
RUPTCY, ET AL.

No. 260.   Argued December 16, 1936.—Decided January 4, 1937.

*Mr. Henry L. Glenn,* with whom *Mr. Rollin Browne* was on the brief, for petitioner.

*Mr. William D. Whitney,* with whom *Mr. R. L. Gilpatric* was on the brief, for Irving Trust Co., Trustee, respondent.

*Messrs. Sanford H. E. Freund, Winthrop H. Kellogg,* and *Douglas B. Steimle* were on the brief for the Preferred Stockholders' Protective Committee, respondent.

By leave of Court, *Messrs. John Gerdes* and *John Godfrey Saxe* filed a brief on behalf of Ella May Voigt et al., Trustees, as *amici curiae,* urging reversal of the decision below.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

Certiorari was granted in this and three following cases involving the construction and validity of provisions of § 77B of the Bankruptcy Act [1] which enlarge the category of provable claims to include one by a landlord for injury due to rejection of a lease, or for damages or indemnity under a lessee's covenant.

---

* See Table of Cases Reported in this volume.

[1] Added to the Bankruptcy Act of 1898 by Act of June 7, 1934, c. 424, § 1, 48 Stat. 912, as amended by Act of Aug. 20, 1935, c. 577, 49 Stat. 664, and Act of Aug. 29, 1935, c. 809, 49 Stat. 965; 11 U. S. C. 207.

Florence H. Bugbee, the petitioner's assignor, leased to United Cigar Stores Company of America premises in Trenton, New Jersey, for a term commencing April 1, 1926, and ending March 31, 1946. August 29, 1932, the lessee was adjudicated a bankrupt upon its own petition. November 11, 1932, the respondent, as trustee in bankruptcy, rejected the lease and abandoned the premises, a portion of which had been sublet by the bankrupt. Without notice to the Cigar Stores Company the landlord relet portions of the building to subtenants in possession and let other portions to new tenants.

June 9, 1934, two days after the passage and effective date of § 77B, the Cigar Stores Company, as permitted by subsection $(p)$, filed in the pending bankruptcy proceeding its petition for reorganization. In the latter cause the petitioner presented a proof of claim for injury resulting from the rejection of the lease. The trustee objected to the claim and asked to have it expunged for the reason that the lease incorporated no covenant to indemnify the lessor for loss of rents or other provision enabling her to hold the tenant for damages or for rent accruing subsequent to termination of the leasehold estate, and asserted the leasehold had been terminated and all obligations of the debtor under the lease extinguished by the landlord's reëntry and reletting.

The special master who heard the cause recommended disallowance of the claim in the view that § 77B did not, and could not, create any valid and legal claims against the debtor where none existed anterior to the enactment of the section, and held that none existed before its adoption because, by the law of New Jersey, the landlord's reëntry and reletting worked a surrender of the leasehold. In his report the master referred to the fact that the record in the earlier bankruptcy proceeding disclosed a claim filed by the landlord, upon which dividends had been paid, for expenditures in restoring a party wall and closing up a

common entrance in the leased building based upon the debtor's agreement to restore it at the expiration of the term, which was again asserted in the present proceeding. He thus commented upon this situation:

"Naturally, the entire basis of this claim for restoration is the expiration of the lease. The Trustee may well point to it, as showing that the Landlord, prior to the enactment of Section 77-B, by her re-entry and reletting of the premises as aforesaid, considered that the lease terminated and expired."

The District Court approved the master's report and rejected the claim; and the Circuit Court of Appeals affirmed,[2] holding that the injury specified in § 77B (b) (10) for which a claim by a landlord is allowable can only be such injury as would found an action under applicable state law. The court concluded that although according to the law of New Jersey the reëntry and reletting did not effect a surrender, the restoration of the building was such an assertion of dominion by the landlord as to deprive her of any further claim against the tenant. •

The parties differ with respect to the correctness of the Circuit Court of Appeals' interpretation of the law of New Jersey. They also disagree as to whether the record supports the finding that the landlord restored a portion of the leased building. The disputes need not be resolved if the petitioner is right in asserting that, within the purview of § 77B, the lessor was a person injured by the rejection of the lease who is accorded a provable claim against the debtor's estate for the injury, notwithstanding the reëntry, reletting, and restoration of the premises, after rejection of the lease, consummated a surrender of the leasehold, and ended the tenant's liability under the local law. As § 77B supplements and extends the bankruptcy system in force at the time of its enactment, we

---

[2] 83 F. (2d) 209.

shall examine the question in the light of the old law, the supposed mischief arising under it and the alterations made by the later act.

1. Section 63 (a) of the Bankruptcy Act of 1898 [3] stated what claims should be provable in bankruptcy. The section gave a landlord no provable claim for rent to accrue after the trustee's rejection of a lease. The tenant's liability for future rent was not discharged and remained enforceable as instalments of rent fell due. This was necessarily so, since future rent is demandable only in the amounts and at the times named in the lease and the total cannot be recovered at law in a lump sum in advance of accrual of the instalments. This state of the law involved elements of hardship to both lessor and lessee. In the case of a corporate, and often in that of an individual lessee, the landlord's right to collect rent from a bankrupt tenant was valueless. On the other hand, if the landlord, notwithstanding rejection by the trustee, was compelled by its terms, or elected pursuant to its provisions, to treat the lease as still in force, he might throughout the remainder of the term harass the discharged bankrupt by successive actions for accruing rent and so retard or prevent the debtor's financial rehabilitation which the statute was intended to aid.

Many leases provide for the termination of the tenant's estate upon his adjudication as a bankrupt, by the lessor's reëntry. Under the old law such termination did not give rise to a provable claim for future rent, or for damages, or for indemnity. Not uncommonly lease agreements, in addition to stipulation for termination of the leasehold upon the tenant's bankruptcy, provide that the bankrupt shall indemnify the landlord for loss of future rent. These provisions vary in their terms, some requiring the rendition of indemnity as each instalment

---

[3] 30 Stat. 562.

of rent falls due, others at the end of the term when the full difference between the rent reserved and that received upon reletting can be ascertained. Under § 63 (a) of the Act of 1898 such covenants did not support a provable claim, as the obligation to indemnify ripened after adjudication. The consequence was that liability under this sort of covenant was not discharged and remained to haunt the bankrupt.

As early as 1932 proposals were brought forward in Congress for the broadening of the bankruptcy system to authorize proceedings for the reorganization of business corporations. Bills authorizing proceedings in courts of bankruptcy to that end failed of passage in the 72d and 73d Congress. H. R. 5884, 73d Congress, Second Session, which ultimately became law as § 77B of the Bankruptcy Act, was under consideration when the decision in *Manhattan Properties, Inc.* v. *Irving Trust Co.*, 291 U. S. 320, threw into high relief the plight in which landlords found themselves as a result of the flood of corporate bankruptcies brought about by the economic depression. The situation of owners of business properties leased to chain store organizations which had resorted to voluntary bankruptcy largely as a lever to force revision of leases was the subject of comment in and out of Congress. By the same act § 63 (a) was amended to give a provable claim to a landlord whose lease had been rejected by a trustee in bankruptcy and a similar provision was incorporated in 77B, the new reorganization section. This history cannot be ignored in construing the supplemental legislation.

2. The purpose of § 77B was to facilitate rehabilitation of embarrassed corporations by a scaling or rearrangement of their obligations and shareholders' interests, thus avoiding a winding up, a sale of assets, and a distribution of the proceeds. A salient element in such a reorganization is the discharge of all demands of whatsoever sort, executory and contingent, presently due or to mature

in the future. Of such claims not the least important are those for rent to accrue under a lease, or for damages or indemnity payable because of the termination of a leasehold. Obviously if such obligations are to be discharged they must be made provable, for they cannot be destroyed. How, then, did the Congress deal with them?

The pertinent provisions of § 77B are copied in the margin.[4]

---

[4] "(a) Any corporation which could become a bankrupt under section 4 of this Act, . . . may file an original petition, . . . in any proceeding pending in bankruptcy, whether filed before or after this section becomes effective, . . ."

"(b) . . . (10) . . . The term 'creditors' shall include for all purposes of this section and of the reorganization plan, its acceptance and confirmation, all holders of claims of whatever character against the debtor or its property, including claims under executory contracts, whether or not such claims would otherwise constitute provable claims under this Act. The term 'claims' includes debts, securities, other than stock, liens, or other interests of whatever character. . . .

"In case an executory contract or unexpired lease of real estate shall be rejected pursuant to direction of the judge given in a proceeding instituted under this section, or shall have been rejected by a trustee or receiver in bankruptcy or receiver in equity, in a proceeding pending prior to the institution of a proceeding under this section any person injured by such rejection shall, for all purposes of this section and of the reorganization plan, its acceptance and confirmation, be deemed to be a creditor. The claim of a landlord for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall be treated as a claim ranking on a parity with debts which would be provable under section 63 (a) of this Act, but shall be limited to an amount not to exceed the rent, without acceleration, reserved by said lease for the three years next succeeding the date of surrender of the premises to the landlord or the date of reëntry of the landlord, whichever first occurs, whether before or after the filing of the petition, plus unpaid rent accrued up to such date of surrender or reëntry: . . ."

"(p) This section shall take effect and be in force from and after the date of the approval of this amendatory Act and shall apply

Clause 10 renders provable, claims upon covenants of indemnity maturing upon reëntry after adjudication. The term "creditors" is made to include "holders of *claims* of whatever character against the debtor or its property, including claims under executory contracts, *whether or not such claims would otherwise constitute provable claims under this Act.*" Bankruptcy of the obligor is an anticipatory breach of an executory contract and a claim for damages for the breach was provable under § 63 (a) of the Act of 1898.[5]  One having a demand against a debtor whose affairs are in the hands of an equity receiver, if the claim matured after the receiver's appointment but before the expiration of the period fixed for presentation of claims, is entitled to prove and to share in distribution;[6] but the rule in bankruptcy has been that the claim under an executory contract must mature at or before the filing of the petition.[7]  The language which is italicized in the foregoing quotation from clause 10 can have no other meaning than that claims upon covenants for damages or indemnity arising out of the termination of a lease after initiation of proceedings under § 77B are provable. The provision, however, creates no new claim. It merely treats the adjudication as a breach of covenant and gives a provable claim in virtue of the breach.

Since in the instant case the lease contains no such covenant, in the absence of some further provision respecting landlords' claims the petitioner would be without remedy under § 77B, as it would have been in strict bank-

as fully to debtors, their stockholders, and creditors, whose interests or debts have been acquired or incurred prior to such date, as to debtors, their stockholders and creditors, whose interests or debts are acquired or incurred after such date. Proceedings under this section may be taken in proceedings in bankruptcy which are pending on the effective date of this amendatory Act."

[5] *Chicago Auditorium Assn.* v. *Central Trust Co.*, 240 U. S. 581.

[6] *Wm. Filene's Sons Co.* v. *Weed*, 245 U. S. 597, 601–602.

[7] *Manhattan Properties, Inc.*, v. *Irving Trust Co.*, supra.

ruptcy proceedings under § 63 (a) of the Act of 1898 until that section was amended in 1934. There is, however, a further provision: "In case an executory contract or unexpired lease of real estate shall be rejected pursuant to direction of the judge [See subsection (c) (5).] given in a proceeding instituted under this section, or shall have been rejected by a trustee or receiver in bankruptcy or receiver in equity, in a proceeding pending prior to the institution of a proceeding under this section *any person injured* by such rejection shall, for all purposes of this section and of the reorganization plan, its acceptance and confirmation, be deemed to be a creditor." Under the old law the rejection of a lease by a trustee in bankruptcy was not a breach of the lease, in the absence of a specific agreement that it should be so. The bankrupt tenant remained liable for the rent as it fell due but all the assets wherewith he might pay were taken from him. For a default in payment subsequent to adjudication the landlord might reënter and terminate the lease. By virtue of a covenant so providing the landlord might treat the bankruptcy as cause for reëntry and termination of the leasehold estate. While, therefore, the rejection of a lease by a trustee in bankruptcy might, and usually did, spell possible or probable injury to the landlord, that fact gave him no standing as a creditor in the bankruptcy proceeding. Having in mind this state of affairs the purpose is clearly to give a landlord a provable claim for injury due to the rejection of his lease, whether the instrument contains a covenant of indemnity or not.

Although, as we have noted, under the Act of 1898 rejection by the trustee was not a breach of the lease, it left the premises in the possession of an impecunious tenant with the virtual certainty they would be thrown back upon the landlord's hands untenanted. If the owner could not turn his property to account on terms as favorable as those embodied in the rejected lease obviously he suffered an injury.

The opinion in the *Manhattan Properties* case, *supra,* adverts to the fact that for many years the English bankruptcy acts have given a remedy for the loss of future rents due to supervening bankruptcy and sequent rejection of the lease.[8] Congress was familiar with this fact when § 77B was under discussion.[9] The analogous provisions of the English Acts while differently phrased are of the same purport as those of § 77B.[10] Congress intended to supply the omission of the Act of 1898 and to create a claim provable in a reorganization proceeding for injury due to a trustee's rejection. This conclusion finds further support in the succeeding sentence, which in limiting the amount allowable upon these claims, refers to them in three aspects, thus: "The claim of a landlord for injury resulting from the rejection of an unexpired lease of real estate *or* for damages *or* indemnity under a covenant contained in such lease," etc.

3. Like any other provable claim, that of a landlord for injury resulting from rejection of the lease, or for damages or indemnity for termination of the tenure, may, for an adequate consideration, be released, *Schwartz* v. *Irving Trust Co., post,* p. 456. The lease, moreover, may contain stipulations, fulfillment of which is to be full compensation for any loss due to termination of the leasehold

---

[8] 291 U. S. at p. 332.

[9] Cong. Rec., Vol. 76, Part 3, p. 2940.

[10] 32 & 33 Vict., c. 71, § 23 (1869); 46 & 47 Vict., c. 52, § 55 (1) (3) (7) (1883); 4 & 5 George V, c. 59, § 54 (1) (3) (7) (1914). The subject is first mentioned in the Act of 1869. The English acts authorize "disclaimers" of onerous property or contracts and specifically refer to leases. The provision for a provable claim based on a disclaimer is the same in the Acts of 1883 and 1914, "Any person injured by the operation of a disclaimer under this section shall be deemed to be a creditor of the bankrupt to the extent of the injury, and may accordingly prove the same as a debt under the bankruptcy."

and thus bar any claim under 77B for the landlord's loss. *Meadows* v. *Irving Trust Co., post,* p. 464.

4. The question for decision in this case is whether the claim recognized by § 77B, which would not have been an enforceable demand at common law, or under the laws of many of the states, is allowable only if the leasehold estate has not, after rejection of the lease, been drowned by surrender effective under state law or otherwise terminated pursuant to state law by the lessor's conduct.

We think it clear that provability of such a claim is unaffected by any termination of the leasehold subsequent to rejection of the lease. The provision is that the landlord's claim for injury resulting from rejection, or for damages, or for indemnity under a covenant, shall be limited to an amount not exceeding the rent reserved "for the three years next succeeding *the date of surrender of the premises to the landlord or the date of reëntry of the landlord, whichever first occurs,* whether before or after the filing of the petition, . . ." Plainly the word "reëntry" is used to describe a case where the landlord, treating the bankruptcy as a breach of the lease, reënters for condition broken. Whether the other phrase, "surrender of the premises to the landlord," denotes the technical surrender which drowns the particular estate in the reversion, or the mere tradition to, and acceptance by, the landlord of possession, is immaterial. The amount of the landlord's claim for the loss of his lease necessarily is the difference between the rental value of the remainder of the term and the rent reserved, both discounted to present worth. This, we have said, is a method of liquidation familiar and fair. It was the method adopted under § 77B in *Kuehner* v. *Irving Trust Co.,* 85 F. (2d) 35, the judgment in which is this day affirmed, *post,* p. 445. If the landlord must give credit for the present rental value of the premises he is

entitled to avail himself of them for realization of that value, and this he cannot do without reëntry and re-letting. If he must give such credit he surely has the option to attempt recoupment of his loss by occupying the premises for the remainder of the term. But such occupation, under the law of most of the states, amounts to a complete termination of the leasehold and deprives the landlord of any further rights as lessor. It is evident that if a lease be rejected the subsequent repossession of the demised premises, and acts of control and dominion do not destroy the provability of a claim under § 77B.

It is suggested that if a landlord desires to avail himself of the privilege accorded by the Section, he must keep the leasehold estate intact until his claim shall have been proved and allowed. In view, however, of the obvious intent of the statute to extend relief not only to land-lords whose leases may in future be rejected, but also to those whose leases have been rejected in prior bank-ruptcy or equity proceedings, such a construction would ill accord with the remedial purposes of the act, which demand a liberal construction in favor of the claimants for whom relief was intended.

We conclude that the petitioner's claim should have been allowed. The judgment is reversed and the cause is remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE took no part in the consideration or decision of this case.