In re NEW YORK, N. H. & H. R. CO.

Claim of CONNECTICUT RY. & LIGHTING CO.

No. 181.

Circuit Court of Appeals, Second Circuit.

March 7, 1938.

484

Emmet, Marvin & Martin, of New York City (George W. Martin, of New York City, of counsel), for appellant Connecticut Ry. & Lighting Co.

Hermon J. Wells, of New Haven, Conn. (James Garfield and Laurens H. Rhinelander, both of Boston, Mass., of counsel), for Howard S. Palmer, James Lee Loomis, and Henry B. Sawyer, as trustees of the Property of the N. Y., N. H. & H. R. R. Co., debtor.

Fleming James, Jr., of New Haven, Conn., and Robert G. Dodge and Talcott M. Banks, Jr., both of Boston, Mass., amici curiæ.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Cross-appeals are taken under section 25a of the Bankruptcy Act, as amended, 11 U.S.C.A. § 48 (a), from an order allowing an unsecured claim of $1,769,281.15 against the estate of the debtor herein and disallowing other claims filed by the claimant in these proceedings for reorganization under section 77 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 205 and note. Counterclaims interposed by the debtor's trustees were disallowed.

On December 19, 1906, the claimant leased its trolley lines to the debtor for 999 years, and on February 28, 1910, the debtor sublet these properties to the Connecticut Company. October 23, 1935, the New Haven filed a petition for reorganization under section 77 of the Bankruptcy Act, as amended, and trustees were appointed. October 31, 1935, the Connecticut Company petitioned for reorganization under section 77B, as amended, 11 U.S.C.A. § 207 and note, and on December 7, 1935, the court ordered the Connecticut Company to reject, disaffirm, and rescind the sublease and various other executory contracts relating to claimant's trolley properties. December 14, 1935, the court authorized the debtor and its trustees to enter into a written agreement with the Connecticut Company terminating the sublease of its trolley properties. This was done, and reports by the debtor and sublessee were filed with the court and approved. On November 16, 1936, the claimant repossessed the trolley properties pursuant to orders of the court entered in each proceeding on petitions of the claimant.

This claim, similar in most respects to that in the proceedings of the Connecticut Company, was filed here. Similar answers and counterclaims were filed by the New Haven and the Connecticut Company in their respective proceedings.

Subsection (b) of section 77 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 205 (b), provides as to claims: "The term 'creditors' shall include, for all purposes of this section all holders of claims of whatever character against the debtor or its property, whether or not such claims would otherwise constitute provable claims under this Act, including the holder of a claim under a contract executory in whole or in part including an unexpired lease.' * * *

In case an executory contract or unexpired lease of property shall be rejected, or shall not have been adopted by a trustee appointed under this section, or shall have been rejected by a receiver in equity in a proceeding pending prior to the institution of a proceeding under this section, or shall be rejected by any plan, any person injured by such nonadoption or rejection shall for all purposes of this section be deemed to be a creditor of the debtor to the extent of the actual damage or injury determined in accordance with principles obtaining in equity proceedings."

The lessor's claim for damages under a rejected lease is provided for under this subsection, and, under subsection (f) of section 77, as amended, 11 U.S.C.A. § 205 (f), liability will be discharged after a limited allowance is imposed. City Bank Co. v. Irving Trust Co., 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324. In the case cited, the court held that a landlord's claim for damages under section 77B arising from the rejection of a lease was provable without any covenant of indemnity which would have been necessary under the applicable state law to give the landlord a right of action under the circumstances. What was said there is applicable to section 77 proceedings on the question of provability of damages. Creditors under section 77 include persons holding claims for future rent. Cf. 11 U.S.C.A. § 205. The amendment of 1935 provides that any person injured by the rejection of an executory contract or lease shall be a creditor "to the extent of the actual damage or injury determined in accordance with principles obtaining in equity proceedings." This imposes a limit on the amount of damages which are allowable on the claims described. Section 77B specifies as a formula for limiting such claims the rent for 3 future years and such rent is constitutionally allowable. Kuehner v. Irving Trust Co., 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340. The extent of the actual damage or injury "determined in accordance with the principles obtaining in equity proceedings" marks the limitation of damages. The court below concluded that "actual damage" meant "accrued damage or injury" to the exclusion of all future damages not yet accrued, and he allowed damages proved up to the date of the hearing with the privilege of proving subsequent damage at later hearings. We think in doing so he applied equitable principles. As he observed, equity "will adopt its proc-

esses in so far as possible as the needs of justice shall require."

The head lease gave the claimant an option to terminate for the lessee's default. This option was exercised, but the trustees argue that they should be compensated for the additions and improvements to the property. However, we believe the court correctly applied the statute to mean that recovery under claims arising out of executory contracts and unexpired leases should be limited in a way to do substantial equity in each case. The court properly declined to allow under this claim for the breach of any future damages. But, where loss of rent is abundantly proved up to the time of repossession of the property, it is of sufficient certainty to be allowed. Therefore, the "actual damage or injury" means that of the past. A long lease such as for 999 years adds to the reasonableness of this application of the statute. Congress intended by the phrase of the statute to end controversies as to future damages involved in long leases, and it did so by making such claims under a lease provable and so dischargeable, thus disposing of them. This construction is clear when consideration is given to the intent of Congress providing for a limitation of 3 years under another section, section 77B. By this section, Congress intended to liquidate future claims of an executory contract of lease in the railroad field. The court below applied a proper measure for the award of damages.

The debtor agreed to "pay all the taxes which may be lawfully imposed * * * with reference to the demised property or said reserved rental." These words make it clear that the landlord should have the rental tax free. The court should have allowed as damages for loss of rentals in the rejection of the lease the stipulated rent of $281,900.88 unpaid at the time the petition was filed, plus the taxes. Thus income taxes of $106,381.95 should have been allowed, and the total is $388,282.13 instead of $332,330.88, as the decree provides. The claimant's federal income tax must be added in calculating the amount realized on the claim for the period between the rejection of the lease and the date of hearing before the court below. Since there is a clause as to rentals, the damages are to be arrived at as therein provided. Filene's Sons Co. v. Weed, 245 U.S. 597, 38 S.Ct. 211, 62 L.Ed. 497; Gardiner v. Butler & Co., 245 U.S. 603, 38 S.Ct. 214, 62 L.Ed. 505.

The lease provides that the claimant might have the option to terminate it on the tenant's default and thereupon to re-enter and repossess the property without prejudice to its right of action for arrears of rent or breach of covenant. The lease did not contain a specific provision making such a forfeiture the equivalent of damages for the breach. However, it is contended, on the authority of Meadows v. Irving Trust Co., 299 U.S. 464, 57 S.Ct. 307, 81 L.Ed. 353, that, both because of the provisions of the lease and in order to apply the principles obtaining in equity proceedings, these forfeitures must be held to constitute pro tanto a substitute for damages. With this we do not agree. The court correctly interpreted the statute to mean that recovery under claims arising out of the lease is limited in such a way as to do substantial equity and the amount of damages arrived at is correct. The accrued rent was likewise properly found except as to the modification for taxes above referred to.

There will be deducted, however, from such allowance for rental damage that sum allowed by way of subrogation in the Connecticut Company proceeding.

The court allowed $173,537.35 as damages for a claim representing the amount of encumbrances upon certain busses which was paid off by the Connecticut Company out of earnings of the administration period. This was pursuant to an order entered May 18, 1936, in the Connecticut Company proceedings. It was an item properly credited against the administration expenses allowed against that company's estate. The claimant has not appealed from that credit. The court below held that the tenant under the lease was obliged to turn over unencumbered busses, and he allowed this deficiency claim against both debtors. He held that for the tenant to fail to pay off these encumbrances would be a violation of the lessee's covenant "at its own risk and expense to furnish" such substitutions for property demised as were necessary for proper operation. We agree that this item was properly allowed as a deficiency.

Other deficiencies claimed were properly disallowed. Under the 1906 lease, the lessee covenanted "at its own expense to maintain said demised premises and property during said term in as good order, repair and condition as the same are now, and in their present state of efficiency." This the court properly held "fixes as a standard the

degree of equality of maintenance as it existed in 1906." There was no evidence as to this standard upon which to support a breach of these covenants of maintenance or restoration. The claimant produced no evidence upon which to support a finding of the 1906 condition of the property.

■ A counterclaim was interposed asking for the contents of the sinking fund, on October 23, 1935, namely, of $4,493,000 par value of bonds of the claimant and $167,-674.61 in cash. The sinking fund was established for the retirement of claimant's bonds when they become due in 1951. This counterclaim was disallowed. The lease does not expressly provide that the contents of the sinking fund should be turned over to the lessee prior to 1951. It states that "the entire contents of the sinking fund" shall constitute a claim of the lessee against the lessor to be liquidated in 1951. There is no express provision for the forfeiture of this claim on the earlier termination of the lease. It must have ripened into an immediate claim upon such termination by the claimant to be enforceable, otherwise it would continue as a claim until 1951 for the entire contents of the fund on October 23, 1935, or an amount equal to the value thereof on that date with interest thereon until 1951. In reorganization proceedings it would be undesirable to postpone for 14 years a settlement which could equally well be made now without inconvenience to anyone. It was properly disallowed.

■ The lessee extended the mileage of the lessor's railways. These extensions were in existence at the commencement of this proceeding. The approximate cost was $532,766.15. The claimant consented to each extension, it having accepted franchises to cover them. The court disallowed this as a counterclaim, holding that there was no breach of the covenant for arbitration contained in the lease proved. Even if claimant had refused to honor the arbitration clause, the debtor was not in a position to press the claim without proof of value. The claimant took the extension and repudiated the appraisal provisions of the lease for determining their value. There was no evidence before the court, and he properly disallowed this counterclaim.

The order below will be modified as indicated, and as modified affirmed.

AUGUSTUS N. HAND, Circuit Judge, concurring in result.