In the Matter of CRAWFORD CLOTHES,
INC., Bankrupt.

NEW YORK CREDIT MEN'S ADJUST-
MENT BUREAU, INC., Trustee,
Appellant,

v.

A. & H. LEVINE, Claimants, Appellees.

No. 81, Docket 34596.

United States Court of Appeals,
Second Circuit.

Argued Oct. 6, 1970.

Decided Nov. 10, 1970.

Julius J. Abeson, New York City (Hahn, Hessen, Margolis & Ryan, New York City, on the brief), for appellant.

Stanley J. Mayer, New York City, for appellees.

Before MOORE, SMITH and AN-DERSON, Circuit Judges.

ANDERSON, Circuit Judge:

This is an appeal from a decision of the district court reversing, on petitions for review, a bankruptcy referee's order which allowed, in reduced amount, the claim of Aaron and Harvey L. Levine, as landlords, against the bankrupt estate of their tenant.

On April 15, 1953 claimants' predecessor leased certain commercial premises in Huntington, Long Island, to Crawford Clothes, Inc. for a term of 25 years (May 1, 1953 to April 30, 1978) at a net annual rental of $25,000, plus certain additional charges. Portions of the premises were sublet to two sublessees.

On June 9, 1961 Crawford Clothes, Inc. filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. On the same day the debtor obtained an order authorizing it to remain in possession of the leasehold as a debtor-in-possession. See 11 U.S.C. §§ 742, 743. A month later, on notice to the claimants, the debtor-in-possession filed a motion, returnable July 12, 1961, for an order authorizing it to disaffirm the lease.[1] The referee took no action on this motion, however, because on June 27, 1961 the debtor-in-possession and the claimants submitted a stipulation which provided, *inter alia*, that the claimants accept surrender of the lease, that the parties exchange general releases, that the debtor pay arrearages of rental and additional charges, and that the parties enter a short-term lease for the period ending December 31, 1961. The final paragraph of this stipulation provided:

"The landlord shall have the right to file a claim as a general creditor for an amount not exceeding $14,000."

On July 12, 1961 the referee approved this stipulation. The debtor-in-possession occupied the premises until December 31, 1961; and the two sublessees, whose leases were disaffirmed by order of the referee, vacated the premises soon thereafter. During the period from July 1, 1961, the date of the stipulated lease, until the debtor and its sublessees quit the premises, the claimants received rentals of $15,990.47 from the debtor and the sublessees.[2]

The claimants diligently sought new tenants during the spring of 1962. On

---

1. Where a debtor continues in possession during a Chapter XI proceeding, § 342 provides that he shall "exercise all the powers of a trustee appointed under this Act." 11 U.S.C. § 742. Section 70, sub. (b) of the Act, 11 U.S.C. § 110(b) empowers a trustee in bankruptcy to reject a lease unexpired on the date of the filing of the petition.

2. The debtor's Chapter XI proceedings terminated on January 12, 1962 when the debtor, in default of confirmation of a plan of reorganization, was adjudicated a

April 6, 1962 they entered into a lease with H. C. Bohack, Inc. for a period of 25 years at a net annual rental of $43,239, plus additional charges. Under its terms the claimants were required to demolish the premises and construct a new building. The lease-term and the payment of rentals were to commence 45 days after notice of the issuance of a Certificate of Occupancy. Demolition began on May 16, 1962. Bohack commenced payment of rent November 19, 1962 and has continued in possession since that date.

The claimants filed their proof of general claim in the amount of $14,000 based upon their assertion that the stipulation for a claim "not exceeding $14,000" liquidated the claim for that amount. The trustee-appellant filed an objection to the claim. The referee ruled that the stipulation set a limit upon the amount of actual damages claimants could prove and that the landlords' claim for damages was to be computed on the basis of rentals reserved from July 1, 1961, the date of the stipulated lease, until May 16, 1962, the date demolition began under the Bohack lease. Offsetting the $26,290.74 rental reserved in the debtor's lease for this period by the $15,990.47 which the claimants had received from the debtor and its sublessees during the same period, the referee allowed a general claim in the reduced amount of $10,300.27.

On cross-petitions for review, the district court held that § 63, sub. a(9) of the Bankruptcy Act, 11 U.S.C. § 103(a) (9), controlled and fixed the amount of damages to be allowed at a full year's rental. But, because claimants' stipulation waived their right to a full year's rental, the court reversed the referee's order and remanded for allowance of a $14,000 claim. The trustee appeals.

It was not until 1934 that landlords' claims for installments of rent, which accrued after a trustee's rejection or a bankrupt tenant's disaffirmance of a lease, were provable in bankruptcy.[3] In that year amendments to the Bankruptcy Act added a new clause to § 63, sub. a, now subsection (9), declaring provable and allowable, debts founded upon

" * * * claims for anticipatory breach of contracts, executory in whole or in part, including unexpired leases of real or personal property: *Provided, however,* That the claim of a landlord for damages for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall in no event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord whichever first occurs, whether before or after bankruptcy, plus an amount equal to the unpaid rent accrued * * *."

Appellant contends § 63, sub. a(9) is inapplicable here because the bankrupt's lease was terminated by the parties' stipulation before any disaffirmance was ordered. But appellant misconceives the applicability of § 63, sub. a(9). By "unexpired lease" Congress did not necessarily mean a non-terminated lease, but rather one which at the time the landlord's claim arose, whether as the result of termination or otherwise, was executory as distinguished from a lease that had not been fully performed.[4] Section 63, sub. a(9) applies, then, to claims arising on damage or indemnity covenants where an executory or unexpired lease is terminated by agreement

bankrupt and the New York Credit Men's Adjustment Bureau, Inc., the appellant in this action, was appointed trustee.

3. City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 437–440, 57 S.Ct. 292, 81 L.Ed. 324 (1937).; see

Friendly, Some Comments on the Corporate Reorganization Act, 48 Harv.L.Rev. 39, 62–70 (1934) ; 3A Collier on Bankruptcy ¶ 63.32 [4].

4. Finletter, The Law of Bankruptcy Reorganization 289–290 (1939).

of the parties prior to a disaffirmance order. Newman, Rent Claims in Bankruptcy and Corporate Reorganization, 43 Col.L.Rev. 317, 321 (1943).

■ Section 63, sub. a(9) performs both a recognition and a limitation function with respect to landlord claims. As discussed above, it makes landlord claims provable in bankruptcy and reorganization proceedings. The section creates no claim independent of survival or indemnity clauses within the lease nor does it provide a method of its own by which damages arising under such clauses are to be calculated. City Bank Farmers Trust Co. v. Irving Trust, 299 U.S. 433, 440, 57 S.Ct. 292, 81 L.Ed. 324 (1937). The parties may provide in an indemnity clause a method of ascertaining the damages actually sustained by the lessor. See 3A Collier on Bankruptcy ¶ 63.33 [2.4]. Section 63, sub. a(9) limits damages computed according to such a clause to the amount of the rent reserved for the year next succeeding the date of the surrender. The section does not, however, guarantee a landlord a full year's rent if the indemnity covenant out of which his damages arise does not operate for a full year following reentry.

■ The indemnity clause of the bankrupt's lease provided:

"If * * * Lessee shall * * * take the benefit of any insolvency act, or if a receiver or trustee be appointed for Lessee's property * * * Lessor may give to Lessee thirty days' notice of intention to end the term of the lease and thereupon at the expiration of said thirty days [the lease shall terminate and] Lessee will remain liable as provided in Article Fourth hereof."

Under that Article the Lessee's obligation to pay rent installments as due survives the Lessor's reentry. The Lessor may relet the premises but must apply rentals received in excess of its cost of the reletting to offset the liability of the Lessee. Provisions such as these are valid under state law. See Hermitage Co. v. Levine, 248 N.Y. 333, 162 N.E. 97 (1928).

■ The debtor set these provisions in operation by obtaining an order to remain as a debtor-in-possession and by exercising the power to disaffirm its lease.[5] In re Walker, 93 F.2d 281, 283 (2 Cir. 1937). The question remains whether claimants' demolition of the premises terminated the operation of those provisions.[6]

The referee said, "[I]n my view, the running of damages ceases when the structure is no more by the voluntary act of the landlord, for his own benefit, and in order to secure a highly prized tenant." Ruling that the stipulation's reference to a $14,000 claim was not a liquidation but merely a limit on any actual damages, the referee computed the damages from the date of reentry until the date of demolition, thereby reducing the lessor's claim to $10,300.27.

■ Neither the appellant's citations nor our own research has produced any New York authority supporting the referee's view that the landlords' demolition of the leased premises terminated the operation of the indemnity clause by which damages provable under § 63, sub. a(9) were measured. The referee's belief rests on the proposition that because the landlords' demolition would have made impossible the debtor's occupancy, it also cut off the lessors' right to rentals reserved in the debtor's lease. But the New York cases hold that the liability of a tenant which is made by agreement to survive the tenant's premature termination of a lease is one for damages and not for rent. See, e. g., Hermitage Co. v. Levine, *supra*. Operation of an indemnity clause employing reserved rentals as the basis for calculating such damages need not presuppose

---

5. Debtor's stipulated surrender of the lease operated as a waiver of its right to thirty days notice of termination.

6. Because the district court construed § 63, sub. a(9) to guarantee the lessor a full year's rent, it did not reach this issue.

that the tenant could have occupied the premises for the unexpired term as the reletting provisions of the debtor's lease make plain. Absent claims by the lessor for the cost of demolition or the cost of locating a new tenant, the demolition did not affect the operation of the indemnity clause for the situation is just as it would have been if Bohack had been willing to occupy the old premises on November 19, 1962.

For the period from July 1, 1961 to November 19, 1962, there was due and payable under the debtor's lease the sum of $43,059.21. After deducting $15,990.47 received from the debtor and subtenants, there remained $27,068.74 in damages. Because the claimants waived their right to collect a portion of that amount equal to a year's reserved rent, they were properly allowed a claim for $14,000.

The order of the district court is affirmed.