In the Matter of INVESTORS FUNDING CORPORATION OF NEW YORK et al., Debtors.

Nos. 74 B 1454, 74 B 1455 and 74 B 1511–74 B 1542.

United States District Court, S. D. New York.

Oct. 22, 1980.

---

Anderson, Russell, Kill & Olick, P. C., New York City, for James Bloor, as Trustee; Eugene R. Anderson, Richard W. Collins, Nicholas J. Zoogman, New York City, of counsel.

Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, for IFC Debentureholders' Protective Committee; Richard Lieb, David Stein, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for Peat, Marwick, Mitchell & Co.; R. Anthony Zeiger, June H. Brettler, Leonard P. Novello, New York City, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for Ernst & Whinney as successor to S. D. Leidesdorf & Co.; David I. Goldblatt, David Aronson, John W. Ritchie, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for The Chase Manhattan Bank, N. A., John J. Jerome, Michael J. Levin, New York City, of counsel.

Carter, Ledyard & Milburn, New York City, for United States Trust Co. of New York; James Gadsden, New York City, of counsel.

Samuel M. Krieger, Nathan M. Fuchs, New York City, for Securities and Exchange Commission.

## MEMORANDUM

BONSAL, District Judge.

James Bloor, as Trustee of Investors Funding Corporation of New York ("IFC") and its 33 subsidiaries, moves to disallow and expunge the claims filed in this reorganization proceeding by Peat, Marwick, Mitchell & Co. and Ernst & Whinney as successor to S. D. Leidesdorf & Co. ("the accountants"), former accountants for IFC. The claims of the accountants seek indemnity and contribution out of the assets of the Estate for the amount of any liability which may ultimately be imposed upon them in six lawsuits presently pending against them and for their expenses including legal fees in defending them.

All six lawsuits charge the accountants with violations of the Federal securities laws in preparing false financial statements for IFC with resultant fraud upon persons who purchased debentures or stock of the company. Five of the lawsuits have been brought as class actions on behalf of debentureholders and stockholders of IFC, and the sixth, *Bloor v. Dansker*, has been brought by the Trustee.

The accountants deny any violations of the securities laws and allege that IFC provided them with false information and failed to furnish other information necessary to properly prepare statements with respect to IFC's financial condition. As none of the lawsuits are ready for trial, the accountants' claims are unliquidated and will remain so until final judgment.

At the present time, the court has under consideration a Plan of Reorganization for IFC and its subsidiaries which has been proposed by the Trustee and by Helmsley Enterprises, Inc. ("Helmsley"), a holding company controlled by Mr. Harry B. Helmsley, a prominent real estate owner and operator. Helmsley will contribute to the reorganized companies assets having a value of at least $70,000,000. The Helmsley plan provides for the distribution of all the assets of the Estate and makes no provision for contingent and unliquidated claims. Hearings were held on the Plan in September, 1980, and the Plan is presently under consideration by the Securities and Exchange Commission.

Before the accountants can be found liable in any of the five class actions or in *Bloor v. Dansker* for violations of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, the trier of fact must find scienter on the part of the accountants at the time the financial statements were prepared. For this purpose, scienter means either that the accountants acted with knowledge that their figures were false, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), or that they acted recklessly without regard to whether or not the figures furnished to them were correct. *Rolf v. Blyth, Eastman, Dillon & Co., Inc.*, 570 F.2d 38 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978). In either case, there would appear no reason why the other creditors, including the debentureholders, should have to reimburse the accountants for the damages sustained by them. To do so would be charging the defrauded creditors to pay the accountants, who had knowledge of the fraud.

It is conceivable that the accountants may incur liability under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77(a), or under state law for negligence in conduct-

ing their audits of IFC's financial records. As the accountants themselves concede, however, with respect to state law claims "... it is not possible at this juncture to state with certainty what common or statutory law, or what state or states are involved, or, accordingly, the nature or extent of a right to indemnity." Accountants' Memorandum of July 14, 1980 at 63.

■ On the other hand, if the accountants win these lawsuits they will presumably collect their costs and be out of pocket only the amount of their attorneys' fees. Since the accountants are engaged for a profit in the business of providing accounting services and offered their services to IFC, these attorneys' fees were ordinary expenses of doing business not chargeable to the Estate.[1]

■ These considerations, while equitable in nature, are properly entertained by a bankruptcy judge. Indeed, the court sits as a court of equity in considering the relative positions of the various categories of claimants. Therefore, it is within the power of the court to subordinate some claims to others of higher equitable priority. *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946); *Pepper v. Litton*, 308 U.S. 295, 304–305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). *See also, In re Stirling Homex Corp.*, 579 F.2d 206, 212–213 (2d Cir. 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979); *Matter of Mobile Steel*, 563 F.2d 692, 699 (5th Cir. 1977).

The accountants seek to make a distinction between equitable subordination and disallowance, a consideration not pertinent to this proceeding. If the Plan of Reorga-

nization being presently considered is approved and confirmed, the Estate will be fully distributed in accordance with the Plan of Reorganization and no funds will remain to satisfy claims which have been subordinated to other claims.[2]

A situation analagous to the one here presented arose in connection with the reorganization in *Matter of Equity Funding Corporation of America*, 416 F.Supp. 132 (C.D.Cal.1975). There, the claims of accountants for indemnity and contribution were substantially similar to the accountants' claims asserted here, since Equity Funding's Trustee was suing the accountants who had audited the company's books and was alleging violation of the securities laws. No provision was made in the reorganization plan for two accountants of Equity Funding who were defendants in the actions against them. The court overruled the accountants' objections to the plan's failure to provide for them:

"Thus, if EFCA is required to deliver assets by way of indemnity or contribution to unsuccessful fraud claimants in the Multi–District Actions, those assets must perforce be taken from the successful defrauded plaintiffs who are EFCA's creditors. Such a result would, in the final analysis, permit the indemnity or contribution claimants to benefit from their wrongful conduct–an unconscionable result." *Equity Funding, supra*, 416 F.Supp. at 156.

■ The accountants point out that the six lawsuits name as defendants other parties who will benefit if the Plan of Reorganization is approved, including the secured bank creditors, both participating and non-

1. Moreover, "[t]he general American rule governing allocation of the costs of litigation places the burden of counsel fees on each party, regardless of the outcome of the action." *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980). *See also Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975).

2. The accountants contend that in equity reorganization, the fact that a particular claim is contingent, not presently due, or not liquidated in amount is no bar to its proof or allowance. Cases cited by the accountants, however, con-

cern claims either contractual or quasi–contractual in nature which arose before the debtor's declaration of insolvency. *Hippodrome Building Co. v. Irving Trust Co.*, 91 F.2d 753 (2d Cir.), *cert. denied*, 302 U.S. 748, 58 S.Ct. 265, 82 L.Ed. 578 (1937); *City Bank Farmers Trust Co. v. Irving Trust Co.*, 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324 (1937); *In re United Cigar Stores Co.*, 82 F.2d 247 (2d Cir. 1936). In contrast, the accountants' claims are based on a tort cause of action and the lawsuits were commenced after the filing of the debtors' petition.

participating, and Republic National Life Insurance Co., a holder of $3,000,000 worth of IFC Senior Convertible Debentures. The accountants assert that these parties also have been accused by the Trustee in *Bloor v. Dansker* of having participated in the alleged fraud practiced on IFC. Consequently, argue the accountants, to disallow their claims would result in excessive recovery to certain creditors and the unjust enrichment of other defendants in the pending lawsuits. The answer to these assertions is, of course, that if the Plan is approved, the claims of the banks, Republic, and the Trustee will have been finally settled and the legal proceedings with respect to them discontinued.

There exist additional equitable considerations calling for the disallowance of the accountants' claims. Any provision made in the Plan of Reorganization for these claims would destroy the Plan, since if the theory of the accountants were accepted, a reserve equivalent to the amount of the outstanding debentures, with interest, would have to be established. Moreover, the accountants might be found to be liable for the total principal amount of the outstanding debentures.

■ Indemnification of an unsuccessful defendant is considered contrary to the policy of the securities laws and is therefore generally disallowed. *Matter of Equity Funding Corp. of America, supra* at 156; *Globus v. Law Research Services, Inc.,* 418 F.2d 1276, 1288 (2d Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). In *Globus,* the court held that an underwriter may not be indemnified by an issuer of securities for liabilities arising out of misstatements in an offering circular of which the underwriter had actual knowledge. *See also Herzfeld v. Laventhol,*

*Krekstein, Horwath & Horwath,* 378 F.Supp. 112 (S.D.N.Y.1974), *aff'd in part, rev'd in part,* 540 F.2d 27 (2d Cir. 1976). Indemnity has also been denied in securities cases where the liability of the party seeking indemnity is founded on negligence or lack of due diligence. *Odette v. Shearson, Hammill & Co.,* 394 F.Supp. 946, 954–57 (S.D.N.Y.1975).

■ Contribution claims are also precluded here by operation of § 57(i) of the Bankruptcy Act and Rule 10–402(a) of the Federal Rules of Bankruptcy Procedure, which prevent duplicate payment of a single debt. *Equity Funding, supra* at 156. *See also Fidelity and Deposit Co. of Maryland v. Fitzgerald,* 272 F.2d 121, 128 (10th Cir. 1959), *cert. denied,* 362 U.S. 919, 80 S.Ct. 669, 4 L.Ed.2d 738 (1960); *Hartman v. Utley,* 335 F.2d 558, 560 (9th Cir. 1964).

The IFC Debentureholders' Protective Committee ("the Committee") contends that the accountants' claims must also be disallowed in view of Section 57(d) of the Bankruptcy Act, 11 U.S.C. § 93(d).[3] The Committee points out that the accountants' claims are presently incapable of "liquidation and estimation" since the amount, if any, of these claims cannot be ascertained until judgment, which will take several years to reach. For this reason, the Committee contends, Section 57(d) requires the present disallowance of the accountants' claims since the process of liquidation or estimation would unduly delay the administration of the estate.

The Committee asserts that Section 57(d) applies not only to strict bankruptcy proceedings, but to Chapter X reorganizations as well, a conclusion which is disputed by the accountants. The Committee points to the last clause of Section 57(d) which reads: "... such claim shall not be allowed if the

---

3. Section 57(d) provides:
"Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless their consideration be continued for cause by the court upon its own motion: *Provided, however,* That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this Act."

court shall determine ... that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this Act." Since Chapter X, argues the Committee, is part of the Bankruptcy Act, § 57(d) may be relied upon in the disposition of this motion. The accountants, on the other hand, point out that in a bankruptcy proceeding such contingent claims are not discharged,[4] whereas in a Chapter X proceeding, if 57(d) is applied, the contingent claims are destroyed in violation of their constitutional rights.

In *In re Cartridge Television*, 535 F.2d 1388 (2d Cir. 1976), the court examined whether the absence of any source for the payment of contingent claims after the complete distribution of the bankrupt's assets was a basis for barring the disallowance of those claims pursuant to Section 57(d). Shareholders of the debtor had filed claims against the estate alleging fraud and violation of the securities laws. Liquidation of the estate yielded a sum considerably smaller than the claimed unliquidated damages. The court found that these claims were properly disallowed under Section 57(d), notwithstanding the fact that contingent creditors would have no hope of subsequent recovery.

Although in *Cartridge* the disallowance issue arose in a straight bankruptcy proceeding, the court's reasoning may persuasively be applied to the matter at hand. Moreover, although the case law is unclear, Section 57(d) appears applicable to Chapter X reorganizations. *See In re Tastyeast, Inc.* 126 F.2d 879, 881 n.8 (3d Cir.), *cert. denied*, 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766 (1942). An examination of the relevant legislative history supports this conclusion as well. *See* Senate Report No. 1916 on H.R.8046, 75th Cong., 2d Session (April 20, 1938).

■ These considerations support the conclusion that Section 57(d) permits the disallowance of the accountants' claims. However, Section 57(d) need not be invoked, in view of the strong equitable grounds requiring their disallowance.

---

**4.** Section 63(d) of the Act, 11 U.S.C. § 103(d), renders nonprovable any unliquidated and contingent claims which are disallowed, thereby protecting these claims from discharge.

In the event that the Helmsley Plan of Reorganization presently under consideration is not approved, or if, after approval, it does not become effective for some reason, the accountants may move for reconsideration of their claims.

The Trustee's motion to disallow and expunge the claims filed by the accountants in this reorganization proceeding is granted.

It is so ordered.