In re AMES DEPARTMENT STORES, INC., Eastern Retailers Service Corporation, et al., Debtors.

WOLF PARTNERSHIP, Movant,

v.

Barry M. MONHEIT, Trustee of The Class AG–6B, Respondent.

Bankruptcy Nos. 90 B 11233 to 11285 (JAG).

United States Bankruptcy Court, S.D. New York.

Aug. 30, 1994.

---

Partnership ("Wolf") as the lessor and debtor Ames Department Stores, Inc. ("Ames") as the lessee. As discussed below, this Court finds that Wolf is entitled to lease rejection damages in the amount of $827,478.36 (plus amounts for post-petition real estate taxes and post-petition common area maintenance charges to be determined at a later hearing) and pre-petition common area maintenance charges in the amount of $17,185.57.

## I. BACKGROUND

On June 24, 1981, G.C. Murphy Company, predecessor-in-interest to Ames, as tenant, and Perry Hall Center, Inc. ("Perry"), predecessor-in-interest to Wolf as landlord, entered into a twenty-five year lease (the "Lease") for premises (the "Premises") located in a shopping center in Baltimore County, Maryland. By agreement dated July 29, 1982, Perry conveyed the Premises and its interest in the Lease to Second Perry Hall Center, Inc. ("Second Perry"). On April 30, 1984, Second Perry conveyed all of its right, title and interest in the Premises and the Lease to Wolf.

On April 25, 1990, Ames and its fifty-two subsidiaries (G.C. Murphy is such a subsidiary) filed for Chapter 11 protection under the Bankruptcy Code. On October 9, 1990, pursuant to an order of this Court, Ames rejected the Lease with Wolf. On April 23, 1991, Wolf timely filed a Proof of Claim for: (1) Pre-petition common area maintenance expenses due under the Lease in the amount of $17,185.57,[1] and; (2) Lease rejection damages in the amount of $827,478.36 (plus amounts for post-petition real estate taxes and post-petition common area maintenance charges).[2]

Alfred Ferrer III, Piper & Marbury, New York City, for movant.

Thomas B. Kinzler, Kelley, Drye & Warren, New York City, for respondent.

### MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

This matter arises out of the rejection of a lease for commercial property between Wolf

1. The Subsidiaries Trustee does not object to allowance of this amount.

2. The amount is calculated using the cap provided under 11 U.S.C. § 502(b)(6). This section states:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—
(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—
(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
(i) the date of the filing of the petition; and

On July 12, 1991, Wolf sold the Premises. On May 27, 1994, Wolf filed a motion for allowance of this claim. The Subsidiaries Trustee Barry M. Monheit (the "Trustee") opposes allowance of the $827,478.36 in lease rejection damages on the grounds that because Wolf sold the Premises, Wolf is only entitled to damages measured from the Lease rejection date until the date the Premises were sold. Under this theory, the Trustee contends that Wolf damages would only total $317,898.04.

 The Court rejects the argument that the sale of the Premises limits Wolf's damages. A landlord's claim for lease rejection damages is to be determined in accordance with state law and the contract between the parties. *In re Financial News Services Network, Inc.*, 149 B.R. 348, 350 (Bankr.S.D.N.Y.1993). Under Maryland law,[3] a breach by a tenant entitles a landlord to damages in an amount equal to the rental for the full remaining term of the lease at the time of the breach. *Wilson v. Ruhl*, 277 Md. 607, 356 A.2d 544 (1976). Ames committed a breach when it rejected the Lease, and the breach is deemed to have occurred immediately preceding the bankruptcy filing. 11 U.S.C. § 365(g); *Financial News Services*, 149 B.R. at 350. Therefore, Wolf is entitled to damages for the full remaining term of the Lease. This state law remedy is limited, however, by the cap provisions of 11 U.S.C. § 502(b)(6) to $827,478.36 (plus $17,185.57 for pre-petition common area maintenance charges).[4]

(ii) the date on which such lessor repossessed, or the lease surrendered, the leased property; plus
(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;
Wolf calculated their claim in accordance with Section 502(b)(6) as follows:

Base rent (annual)—
$359,773.20 × 15½ years * × 15% = $827,478.36

* This is the term remaining under the Lease as of the petition date.

For a clear discussion of Section 502(b)(6), *See* James F. Queenan, Jr., Phillip J. Hendel and Ingrid M. Hillinger, Editors, *Chapter 11 Theory*

The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.Bankr.P. 7052.

An appropriate order shall enter.

*and Practice: A Guide to Reorganization* (Horsham, Pennsylvania: LRP Publications, 1994).

3. The terms of the Lease are governed by Maryland law.

4. As part of its lease rejection claim, Wolf is also entitled to damages for post-petition real estate taxes and post-petition common area maintenance charges. However, the figures that Wolf provided for these items were added incorrectly (*See* Memorandum in Support For Allowance of Claim of Wolf Partnership, p. 4), and it is not clear how the figures were derived. Therefore, a hearing will be scheduled for the limited purpose of determining the amount of post-petition real estate taxes and common area maintenance charges due Wolf.