**In re AMES DEPARTMENT STORES, INC., Eastern Retailers Service Corporation, et al., Debtors.**

**FIRST TRUST OF NEW YORK, N.A., f/k/a Bankamerica National Trust Company, as Trustee of the Zayre Landlord Trust, Appellant,**

v.

**The JOY GOODWIN RUDD TRUST, Appellee.**

No. 96 Civ. 529 (JES).

United States District Court, S.D. New York.

June 26, 1997.

Ropes & Gray, Boston, MA (Douglas H. Meal, of counsel), for Appellant.

Lange, Simpson, Robinson & Somerville, Birmingham, AL (Richard P. Carmody, Stephen P. Leara, of counsel), for Appellee.

Day, Berry & Howard, Stamford, CT (Thomas D. Goldberg, Joy Beane, of counsel), for Appellee.

## OPINION AND ORDER

SPRIZZO, District Judge.

Appellant First Trust of New York, N.A., f/k/a BankAmerica National Trust Company, as Trustee of the Zayre Landlord Trust (the "Zayre Landlord Trustee") filed the instant appeal from a Memorandum Decision and Order of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") granting summary judgment to appellee, the Joy Goodwin Rudd Trust (the "Rudd Trust"), allowing Claim No. 8306 (the "Claim") for lease rejection damages, and denying the Zayre Landlord Trustee's cross-motion for summary judgment disallowing the Claim. For the reasons that follow, the Memorandum Decision and Order of the Bankruptcy Court allowing the Rudd Trust's claim is vacated and the case is remanded for further proceedings consistent with this Opinion.

## BACKGROUND

On June 5, 1980, the Joy E. Goodwin Trust (the "Goodwin Trust"), the Rudd Trust's predecessor in interest, as landlord, leased 60,200 square feet of commercial retail space in the Fort Walton Square Shopping Center (the "Premises") to Zayre Corporation, predecessor in interest to the Zayre Florida Corporation ("Zayre Florida"), a subsidiary of Ames Department Stores, Inc. ("Ames"), as tenant. See Appendix to Brief of Appellant ("App.") at 7, Exh. A, Lease dated June 5, 1980. The thirteen year lease required Zayre Corporation to pay a minimum annual rent of $129,325.00, or $2.15 per square foot. Id. at 10.

On November 13, 1990, Ames and its subsidiaries (collectively, the "Ames Group") commenced Chapter 11 proceedings in United States Bankruptcy Court for the Southern District of New York, before Chief Bank-

ruptcy Judge James A. Goodman.[1] That same day, pursuant to 11 U.S.C. § 365(a) (1994), the Ames Group rejected the shopping center lease and the Premises reverted to the Rudd Trust. See App. at 2.

The Rudd Trust leased the Premises to three replacement tenants. On March 15, 1992, the Rudd Trust leased 51,500 square feet to Ron Callan for a 90–day term at $9,000.00. See App. at 92–93, Exh. H, Affidavit of Kimberly B. Golson Sworn to June 13, 1995 ("Golson Aff.") ¶ 3.[2] Beginning on October 1, 1992, the Rudd Trust leased 25,600 square feet to Consolidated Stores Corporation ("Consolidated") for five years at an annual rent of $75,000.00. See App. at 93, Exh. H, Golson Aff. ¶ 4; App. at 114, Exh. 2, Lease Dated October 1, 1992. Beginning on June 9, 1993, the Rudd Trust leased 34,600 square feet to Home Accents, Inc. ("Home Accents") for seven years at an annual rent of $93,770.04 for the first five years and $101,402.04 for the last two years. See App. at 93–94, Exh. H, Golson Aff. ¶ 5; App. at 141, Exh. 3, Lease Dated June 9, 1993.[3]

From November 13, 1990 to November 30, 1993, the Rudd Trust collected $101,347.15 in rentals. See App. at 94, Exh. H, Golson Aff. ¶ 6. In order to accommodate Consolidated and Home Accents, the Rudd Trust renovated the Premises at a cost of approximately $104,000.00. Id. ¶ 7. The leases with Consolidated and Home Accents (the "New Leases") together occupied the full 60,200 square feet of the Premises. Currently, the Rudd Trust collects $168,770.04 annually from the New Leases—$39,445.04 more than would have been due annually under the original lease. Id. ¶¶ 4, 5.

In an affidavit dated April 22, 1992, Rudd Trust trustee Joy G. Adams stated that she considered the current market rental value of the Premises to be no less than three dollars

---

1. Chief Bankruptcy Judge, United States Bankruptcy Court, District of Maine, sitting by designation.

2. The affidavit of Joy G. Adams, trustee of the Rudd Trust, indicates that the lease was for $10,000. See App. at 81, Affidavit of Joy G. Adams Sworn to April 22, 1992 ("Adams Aff.") ¶ 5.

3. The Home Accents lease states these figures as the "fixed minimum rent," and provides for a

"total additional rent" above these rates, consisting of annual expenses associated with the operation of the Shopping Center (including taxes, insurance, maintenance and dues), figuring to $119,568.00 per year for the first five years, and $127,657.92 per year for years six and seven. See App. at 144–145, Exh. 3, Lease Dated June 9, 1993.

per square foot, or $180,600.00 rent per year. *See* App. at 81, Exh. F, Adams Aff. ¶ 4. In supporting papers submitted to the Bankruptcy Court, the Rudd Trust explained that this figure was an estimate and not based upon a real estate appraisal. *See* App. at 242, Plaintiff's Reply To Defendant's Statement Of Material Facts As To Which There Exists No Genuine Issue To Be Tried, dated June 17, 1995 ¶ 1.

On April 15, 1991, pursuant to 11 U.S.C. § 502(b)(6), the Rudd Trust filed a Chapter 11 proof of claim, Claim No. 8306, seeking one year's rent of $129,325.00 arising from the rejection and termination of the lease. *See* App. at 76, Exh. D, Proof of Claim.

In or about December, 1992, the Bankruptcy Court confirmed the Ames Group's reorganization plan (the "Ames Plan") and classified Claim No. 8306 as the "Zayre Landlord Claim." The Ames Plan gave the Zayre Landlord Trust responsibility for defending against and making payments on the Zayre Landlord Claims, including Claim No. 8306.

On January 16, 1995, in Bankruptcy Court, the Rudd Trust moved for summary judgment allowing Claim No. 8306 arguing that under Florida Law the Rudd Trust is entitled to damages from Zayre's rejection of the lease. The Zayre Landlord Trustee cross-moved for summary judgment disallowing the Claim arguing that under the doctrine of *City Bank Farmers Trust Co. v. Irving Trust Co.*, 299 U.S. 433, 443, 57 S.Ct. 292, 297, 81 L.Ed. 324 (1937), the claim is invalid because the rental value of the Premises exceeded the rent reserved in the lease, and thus the Rudd Trust suffered no damages.

On December 28, 1995, in a two-page Memorandum Decision and Order, the Bankruptcy Court granted the Rudd Trust's motion for summary judgment and denied the Zayre Landlord Trustee's cross-motion for summary judgment. *See* App. at 311–13, Memorandum Decision Dated December 27, 1995; Order Dated December 27, 1995. The Bankruptcy Court followed the reasoning of *Wolf Partnership v. Monheit*, 173 B.R. 80, 82 (Bankr.S.D.N.Y.1994), an earlier decision by that court, in which it held that a landlord's claim for lease rejection damages is to be determined in accordance with state law and the contract between the parties. *Id.* The Bankruptcy Court found that the Rudd Trust had actual mitigated damages of $281,954.32, that it had made reasonable attempts to mitigate, and that pursuant to 11 U.S.C. § 502(b)(6) (1994), it was entitled to $129,-325.00 in damages. *Id.*[4]

On January 5, 1996, the Zayre Landlord Trustee filed the instant appeal from the Bankruptcy Court's Memorandum Decision and Order. On appeal, the Zayre Landlord Trustee argues that (1) the Bankruptcy Court should have applied the measure of damages enunciated in *Farmers Trust* and disallowed Claim No. 8306 in its entirety; (2) under Florida law, if applicable, the Bankruptcy Court should have found a surrender and acceptance of the lease and disallowed Claim No. 8306 in its entirety; and (3) genuinely disputed issues of fact with respect to the Rudd Trust's efforts to mitigate damages preclude summary judgment in favor of the Rudd Trust.

## DISCUSSION

The Court reviews a bankruptcy court's grant of summary judgment de novo. *See In re Chateaugay Corp.*, 89 F.3d 942, 946 (2d Cir.1996); *In re Colonial Realty Co.*, 980 F.2d 125, 130 (2d Cir.1992); *In re CIS Corp.*, 172 B.R. 748, 754 (S.D.N.Y.1994). Pursuant to Federal Rule of Bankruptcy Procedure 7056, summary judgment in bankruptcy proceedings is governed by Federal Rule of Civil

---

4. The substantive portion of the Bankruptcy Court's Memorandum Decision provides:

 Rudd Trust, under Florida law, made reasonable attempts to mitigate damages and this Court, in applying 11 U.S.C. § 502(b)(6) caps its claim at $129,325.00. After studying the extensive briefs filed by both parties, this Court sees no reason to deviate from its reasoning in the case of *Wolf Partnership v. Monheit*, 173 B.R. 80 (Bankr.S.D.N.Y.1994).

App. 312, Memorandum Decision dated December 28, 1995.

The case cited by the Bankruptcy Court, *Wolf Partnership*, involved Maryland, not Florida law. In addition, the Memorandum Decision did not discuss *Farmers Trust*, which was briefed by the Zayre Landlord Trustee.

Procedure 56(c) and shall be granted only when there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Consarc Corp. v. Marine Midland Bank N.A.,* 996 F.2d 568, 572 (2d Cir.1993).

■ Pursuant to 11 U.S.C. §§ 501 and 502(b)(6), where a landlord of real property asserts a claim against the estate of a debtor for damages resulting from the anticipatory breach of a lease, damages are limited to the rent reserved by such lease without acceleration, for one year, or fifteen (15) percent of the remaining term of the lease for a total period not to exceed three years, whichever sum is greater. *See* 11 U.S.C. § 502(b)(6). However, the Bankruptcy Code does not define how damages are measured.

The Bankruptcy Act of 1898 as originally enacted did not give a landlord a provable claim for rent due in the future under a lease after a trustee's rejection of the lease. *See City Bank Farmers Trust Co. v. Irving Trust Co.,* 299 U.S. 433, 437, 57 S.Ct. 292, 294, 81 L.Ed. 324 (1937); *Oldden v. Tonto Realty Corp.,* 143 F.2d 916, 918 (2d Cir.1944). Under the Bankruptcy Act, courts were virtually unanimous in concluding that such a claim was not capable of proof, since it involved only a future claim contingent upon uncertain events and thus no fixed liability absolutely owing. *See Oldden,* 143 F.2d at 918. Consequently, a tenant's liability for future rent could not be discharged and remained enforceable as installments of rent fell due. *See Farmers Trust,* 299 U.S. at 437, 57 S.Ct. at 294.

This frustrated the purposes of bankruptcy in that the rehabilitation of a bankrupt through discharge of his or her debts was impaired by the non-dischargeable character of these future rent claims. *See Oldden,* 143

F.2d at 920. Similarly, landlords faced the uncertain prospect of collecting on future rent payments as they became due because a debtor might well then be financially incapable of paying them. *See Farmers Trust,* 299 U.S. at 437, 57 S.Ct. at 294. This was especially true since courts rejected provisions in leases requiring indemnity as each installment fell due, or at the end of the term, since that obligation to indemnify ripened after adjudication of the bankruptcy. *Id.* at 437–38, 57 S.Ct. at 294–95.

As a result, in 1934, Congress amended the Bankruptcy Act to enable landlords to protect themselves in the event of a tenant's bankruptcy by making claims for future rents specifically provable up to a certain statutory cap, thus striking a balance between the interests of the debtor, the landlord, and other creditors. *See Oldden,* 143 F.2d at 920. In *Farmers Trust,* the Supreme Court held that these amendments preempted state law to the extent that state law did not permit an action for damages to be maintained prior to the end of the lease term. 299 U.S. at 434, 57 S.Ct. at 293. In so holding, the Supreme Court stated that the amount of a claim for the loss of a lease necessarily is the difference between the rental value of the remainder of the term and the rent reserved, both discounted to present worth. *Id.* However, nothing in *Farmers Trust,* or any cases cited since, have indicated that in making that statement the Supreme Court was holding that Congress intended to preempt state law with respect to what should be the appropriate measure of damages.[5]

There is no need here, however, to be concerned with the issue of whether *Farmers Trust* preempts state law on the issue of measure of damages because Florida law provides the same measure of damages as *Farmers Trust. See Kanter v. Safran,* 68 So.2d 553, 558–59 (Fla.1953) (stating that

---

5. Following *Farmers Trust,* various courts have referred to a so-called *Farmers Trust* presumption pursuant to which, in the event of a breach, a lessor can re-rent a leased premises for the amount of the reserved rent without loss or damage. *See Palmer v. Connecticut Ry. and Lighting Co.,* 311 U.S. 544, 558, 61 S.Ct. 379, 384, 85 L.Ed. 336 (1941); *In re W.T. Grant Co.,* 36 B.R.

939, 941 n. 1 (Bankr.S.D.N.Y.1984); *In re D.H. Overmeyer Co.,* 10 C.B.C. 17, 22 (Bankr.S.D.N.Y. 1976). However, this presumption rested on the assumption that *absent contrary proof,* in such situations a lessor suffered only nominal damages. In this case, such contrary proof exists and the presumption is therefore inapplicable.

under circumstances amounting to repudiation of a lease agreement, a lessor is not required to relet the premises for the account of the lessee in order to preserve his right to general damages for the loss of future rents, but instead, a cause of action arises in favor of the lessor for full damages, present and prospective, which is determined by the difference, reduced to present worth, between the rent fixed in the lease and the present fair rental value of the premises for the remainder of the term, together with any special damages resulting from the breach). The Court therefore need only resolve whether there are genuine issues of material fact relating to that measure of damages.[6]

 In this case, neither the Rudd Trust nor the Zayre Landlord Trustee is entitled to summary judgment. First, the rent received by the Rudd Trust from the New Leases permits the rational inference that the Rudd Trust could have rented the Premises earlier at a rate less than the New Leases but higher than the reserved rent. On the other hand, the Rudd Trust's initial failure to re-rent the Premises permits a competing rational inference that the fair market value of the remainder of the lease was less than the reserved rent, because the lessor, as a prudent business person, might not have let the premises remain vacant if he or she could have recouped the rent by a timely re-rental. Since either inference would be rational, summary judgment is inappropriate.

Moreover, the record is bereft of any appraisal testimony as to the rental value of the Premises at the time the lease was rejected.

Nor do the affidavits submitted by the parties indicate that there was no buyer ready, willing and able to rent the Premises at the reserved rent prior to the execution of the New Leases.[7]

Furthermore, the Court rejects the Zayre Landlord Trustee's argument that an "admission" contained in the Adams affidavit as to the fair market value of the Premises requires a rational fact-finder to conclude that the Rudd Trust suffered no damages. This admission is at best an informal admission, as distinguished from a solemn or judicial admission, and is not in any sense final or conclusive. *See* 4 Wigmore, *Evidence* §§ 1058–59. Therefore, it merely serves as an inconsistency which discredits, to a greater or lesser degree, the Rudd Trust's present claim and other evidence which may be submitted in support thereof. *Id.; see also Colby v. Klune*, 178 F.2d 872, 872–74 (2d Cir. 1949) (stating that statements in affidavits certainly do not suffice because their acceptance as proof depends on credibility; and—absent unequivocal waiver of a trial on oral testimony—credibility ought to not, "when witnesses are available, be determined by mere paper affirmations or denials that inherently lack the important element of witness' demeanor").

### CONCLUSION

In sum, the action must be remanded to the Bankruptcy Court for a trial on the issue of the Rudd Trust's damages and its efforts to mitigate damages as they may bear upon that determination. For the reasons set forth above, the Memorandum Decision and Order of the Bankruptcy Court allowing

---

6. The Court rejects the Rudd Trust's argument that damages can or should be measured by the rents received, or not received, in the period following the rejection of a lease. Such a rule would undercut the purposes of the amendment requiring the amount of the claim to be determined promptly. Moreover, the Rudd Trust's reliance on *In re W.T. Grant*, 36 B.R. 939, is misplaced because in that case the evidence conclusively established that the lessor had re-rented the premises in excess of the reserved rent discounted to present value, and it was clear therefore that the lessor suffered no damages.

7. The determination of "rental value" is a market-oriented fact as to whether there exists a willing buyer, ready and able to rent a premises.

This is especially true since the Supreme Court noted in *Palmer v. Connecticut Ry. & Lighting Co.*:

> Every anticipatory breach of an obligation, and every appraisal of damage involving the present value of property involves a prediction as to what will occur in the future. Present market value of property is but the resultant of the prediction of many minds as to the usability of property and probable financial returns from that use, projected into the future as far as reasonable, intelligent men can foresee the future.

311 U.S. 544, 559, 61 S.Ct. 379, 384, 85 L.Ed. 336 (1940).

Claim No. 8306 is vacated. The case is remanded to the Bankruptcy Court for a trial on the issue of damages consistent with this Opinion.

It is **SO ORDERED.**